679 So.2d 1321 (1996)
Gary Allen HARPER
v.
STATE of Louisiana, DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, et al.
No. 96-C-0047.
Supreme Court of Louisiana.
September 5, 1996.
Rehearing Denied October 25, 1996.
Richard P. Ieyoub, Attorney General, David G. Sanders, Baton Rouge, for Applicant.
Richard E. Starling, Jr., Pineville, David R. Lestage, De Ridder, for Respondent.
VICTORY, Justice.[*]
We granted certiorari in this case to determine whether the lower courts were erroneous in holding the State of Louisiana, Department of Public Safety and Corrections ("DPSC"), liable in connection with injuries inflicted upon plaintiff by an escaping prisoner who was incarcerated in a parish jail for violating his parole, and, if the DPSC is liable, to determine the correct method for apportioning damages.

FACTS AND PROCEDURAL HISTORY
On March 16, 1989, defendant, Timothy Dowden, on parole and under the supervision of the DPSC, was arrested for violating his parole and booked in the Vernon Parish Jail. Approximately one or two days later, Dowden was transferred to the Grant Parish jail due to overcrowding. His jail card, which indicated that he was incarcerated because he was a parole violator, was also sent to the Grant Parish jail. After being in that facility for about one month, Dowden was made a trustee and assigned by Grant Parish Warden Alva Lary to work outside the jail as a carpenter at a workshop in Bentley, Louisiana.
On Friday, April 14, 1989, Probation and Parole Officer Paul Hannegan went to the Grant Parish jail to deliver a Notice of Preliminary Hearing concerning Dowden's possible revocation of probation[1] to Dowden and was informed that Dowden was working outside the jail at the workshop in Bentley. Sometime before lunch, Hannegan arrived at the workshop and delivered the Notice to Dowden. At that time, Dowden was working with another inmate, plaintiff Gary Allen Harper, and the two were being supervised by two Grant Parish deputy sheriffs.
*1322 On the morning of Monday, April 17, 1989, Dowden and Harper were transported from the Grant Parish jail to the workshop by Grant Parish Deputy Sheriff George C. Lasyone, where Harper and Dowden were left unsupervised with unlimited access to tools and automobiles. Shortly after Lasyone left, Dowden struck Harper in the head with a two-by-four piece of lumber as Harper attempted to prevent Dowden from escaping. After injuring Harper, Dowden escaped using one of the cars at the workshop. Harper suffered severe brain damage as a result of his injuries.
Plaintiff brought this action against the DPSC, Grant Parish Sheriff L.R. Hataway, Vernon Parish Sheriff Frank A. Howard and Timothy Dowden. Prior to trial, the claim against Hataway was compromised. After a bench trial, the trial court found Howard to be without fault, found Dowden had willfully and intentionally committed battery upon the plaintiff and found the DPSC and Hataway also liable. The trial judge assessed fault on the part of Hataway at 60% and fault on the part of the DPSC at 40%. Judgment was rendered against Dowden and the DPSC decreeing Dowden liable in solido for the entire amount of the judgment and fixing the DPSC's portion of liability at 40%, but decreeing the DPSC solidarily liable to the extent of 50% of the entire amount of the judgment.
The Third Circuit Court of Appeal affirmed the judgment regarding the DPSC's liability but amended the judgment against the DPSC "to reflect that the [DPSC] is entitled to have plaintiff's recovery reduced by the amount of the released tortfeasor's portion of fault which is sixty (60%) percent." Harper v. State, Dept. of Public Safety and Corrections, et al, 95-771, p. 6 (La.App. 3rd Cir. 12/06/95), 664 So.2d 841, 844.
The DPSC applied for a writ of certiorari in this case, assigning as errors that the lower courts erred in finding that the DPSC had a duty to warn or advise Grant Parish Sheriff Hataway not to use an inmate on parole violation as a worker outside of the jail, that the DPSC breached the duty and that this breach was a cause-in-fact of plaintiff's harm, and that, in the alternative, the court of appeal's judgment is ambiguous in that it fails to clearly delineate the DPSC's liability. We granted the writ. 96-0047 (La. 3/8/96), 669 So.2d 414.

DISCUSSION
The lower courts found the DPSC liable because Hannegan failed to warn or advise the Grant Parish Sheriff's Office that the use of Dowden outside of the jail violated the policies and procedures of the DPSC, based on the following reasoning:
We agree with the trial court's finding that one of the main reasons underlying the DPSC policy forbidding parole violators from working as trustees is the risk of flight that arises because the violator is aware of the possibility he may be returned to the state prison system. The DPSC has a duty to enforce this policy and in so doing reduce the risk of escape of parole violators such as Dowden. The trial court was correct in finding that this duty is intended to protect individuals from harm by escaping inmates, and the harm encountered by plaintiff was within the scope of protection afforded by this duty. We find no error in the trial judge's finding that the breach of the duty owed by the DPSC was a cause-in-fact of plaintiff's injuries.
664 So.2d at 843.
We disagree with the holding that the DPSC had a duty in this case. By statute, the sheriff is charged with the safekeeping of prisoners in his jail, including those who are transferred to his jail. LSA-R.S. 15:704, 15:706 C. In addition, although parolees shall remain in the legal custody of the DPSC, once the parolee has violated the conditions of his parole and been arrested and placed in parish jail, he is in the custody of the sheriff of the parish to whose jail he has been placed, not the custody of the DPSC. See State of La. ex rel. Peck v. Phelps, 385 So.2d 212 (La.1980) (prisoner in parish jail awaiting trial on charges of forgery and parole violation was not in custody of the Department of Corrections ("DOC") such that forfeiture of "good time" during this period by the DOC was improper); Cooley v. State, 533 So.2d 124 (La.App. 4th Cir. *1323 1988) (sheriff has absolute authority over inmate sentenced to hard labor and committed to the DPSC but in parish jail due to overcrowding, even where sheriff is receiving money from DPSC to house the inmate); LSA-R.S. 15:574.7. Not until a pre-revocation hearing has been held and the parole board has received a summary of the proceedings may the parole board order the parolee returned to the custody of the DPSC. LSA-R.S. 15:574.7 B(2). The record reflects that Dowden had not had a pre-revocation parole hearing at the time of his escape and that Grant Parish was not even receiving money from the state to house Dowden as Dowden had not yet had his parole revoked.
The DPSC has been held liable solely because it apparently had a vague policy that parole violators should not be allowed to work outside of a jail. Testimony at trial from Hannegan indicated that he believed the policy was one from the Alexandria division of the DPSC. James Bailey, Hannegan's supervisor, testified that he thought the policy originated from Adult Services, a department of the DPSC. However, this was evidently not a written policy. The only evidence of this policy was from Hannegan and Bailey and they clearly knew very little about it. There is no evidence in the record as to why the policy was in place, exactly what the policy was, to whom it applied, or, whether there were any exceptions to the policy.
Further, there is evidence in the record that if this policy existed, the DPSC could not enforce it. Sheriff Hataway testified that the DPSC had no input as far as the actual supervision of prisoners of Dowden's status and that Hataway needed no special permission to use Dowden, or any other prisoner, away from the jail. He testified that he had never in his 17 years as sheriff sought DPSC permission to work a parole violator away from the jail. This is consistent with Vernon Parish Warden Dewey Creecy's testimony that he did not need DPSC permission to work a parole violator as away from the jail. Bailey testified that the DPSC was involved "only in a reporting status. In other words, we're not empowered to take any action against any inmate." Bailey testified that when a parole officer becomes aware that the policy is being violated, the proper procedure is for the parole officer to simply complete an Unusual Occurrence Report on the next business day following the violation and send it to Adult Services. There is no evidence in the record to suggest what happens as a result of this reporting.
We have been given no citation to any statute or regulation which would give any arm of the DPSC the power to control what a sheriff does with prisoners in his custody. To the contrary, under LSA-R.S. 15:708, a sheriff is specifically authorized to use any willing prisoner, including a prisoner awaiting transfer to a state correctional facility, as manual labor outside of the prison, and such prisoners would always remain under the custody and control of the sheriff. LSA-R.S. 15:708 A(1). Furthermore, the sheriff is responsible for establishing regulations regarding the discipline, working and employment of such prisoners. LSA-R.S. 15:708 B. By statute, only where a sheriff transfers a prisoner who is under sentence to the DPSC to another jail, or where a inmate sentenced to the DOC is going to be used in a work release program, is DPSC or DOC approval required. LSA-R.S. 15:706 A(3) and 15:711 B. Other than these two exceptions, "the sheriff has absolute authority over the inmate without any control whatsoever exercised by the DPSC." Cooley, supra at 126.
Sheriff Hataway testified that he needed a carpenter to work on a boat at the workshop and because Dowden's jail card indicated that Dowden was a carpenter, he decided to use him away from the jail to help with the boat, knowing that Dowden was a parole violator. It was Hataway's duty to properly exercise his judgment in choosing which prisoners he would work away from the jail, as it was his duty to ensure that these prisoners were properly supervised and did not escape and harm someone in the process. Even if the Alexandria division of the DPSC or Adult Services may have had a belief or unenforceable policy that parole violators were high-risk prisoners and should not be allowed outside the jail, that does not burden the DPSC with a duty to tell Hataway, charged with Dowden's custody, of that internal policy.[2] *1324 The most Hannegan could have done was tell the sheriff's office that Dowden was a parole violator, a fact known to the sheriff's office, and that the DPSC or Adult Services thought that working him away from the jail was a bad idea. Apparently, Sheriff Hataway had already decided that the risk of escape was worth the benefit of Dowden's work on the boat. When Hannegan observed Dowden working outside the jail on Friday, April 14, 1989, Dowden was being supervised by Grant Parish deputy sheriffs. Under these conditions, Hannegan had no reason to believe that Dowden would have an opportunity to escape or that Dowden would harm another individual in the process.

CONCLUSION
We find that the lower courts committed an error of law in holding that the DPSC had a duty to warn the Grant Parish Sheriff or Warden that Dowden should not be worked away from the jail because he was a parole violator.[3] Therefore, the DPSC is not liable for plaintiff's injuries. Sheriff Hataway, in his official capacity as sheriff, is 100% at fault. Dowden, as the intentional tortfeasor and the only remaining party in the suit, is solidarily liable for the entire amount of plaintiff's damages. Because we find that the DPSC is not liable, we need not reach the DPSC's third assignment of error that the court of appeal's opinion is ambiguous in that it fails to clearly delineate the DPSC's liability.

DECREE
For the reasons stated herein, the judgment of the court of appeal, holding the DPSC liable for plaintiff's injuries, is reversed.
REVERSED.
WATSON, J., dissents, believing the lower courts were correct.
BLEICH, J., dissents for the reasons assigned by WATSON, J.
NOTES
[*] Kimball, J., not on panel, Rule IV, Sec. 3.
[1] Dowden was under dual supervision for probation and parole.
[2] Public entities are generally immune from suit based on the performance of their policy making or discretionary acts, except where the acts or omissions are not reasonably related to the legitimate governmental objective for which the policy making or discretionary power exists, or where the acts or omissions constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct. LSA-R.S. 9:2798.1. Here, we know so little about the policy it is difficult to determine if this statute is applicable.
[3] Because of our finding on the duty issue, we need not reach the assignment of error, strenuously argued by the DPSC, that the lower courts erred in finding that the DPSC breached a duty owed to plaintiff and in finding this breach was a cause-in-fact of plaintiff's injuries.