743 So.2d 694 (1999)
James A. SEAMAN, et al., Plaintiffs Respondents,
v.
Frank A. HOWARD, et al., DefendantsApplicants.
No. W98-1492.
Court of Appeal of Louisiana, Third Circuit.
June 2, 1999.
Writ Denied October 29, 1999.
*695 Howard N. Nugent, Jr., Alexandria, for James A. Seaman, et al.
David Ramsey Lestage, De Ridder, for Frank A. Howard, et al.
Victoria Reed Murry, Baton Rouge, for State of LA., Dept. of Public Safety, et al.
BEFORE: THIBODEAUX, COOKS, and PICKETT, Judges.
THIBODEAUX, Judge.
Plaintiff, James A. Seaman, filed suit against several defendants, including the State of Louisiana, through the Department of Public Safety and Corrections (hereinafter "DPSC"), seeking damages for his exposure to the HIV virus and for his fear of contracting AIDS. His exposure resulted from an altercation with an escaped DPSC prisoner, Larry Jeansonne, who was being housed in the Vernon Parish Correctional Facility. The DPSC filed a motion for summary judgment which the trial court denied. Although we denied DPSC's writ application, the Louisiana Supreme Court granted the writ application and remanded the matter for briefing argument, and opinion. For the reasons which follow, the judgment of the trial court denying the DPSC's motion for summary judgment is affirmed.

I.

ISSUE
We shall consider whether the trial court properly denied the DPSC's motion for summary judgment.

II.

FACTS
In August of 1993, Larry Jeansonne was convicted of cocaine possession and sentenced to the custody of the DPSC. Following his sentencing, Jeansonne returned to the East Baton Rouge Parish Correctional Facility. He was transferred to the custody of the Vernon Parish Correctional Facility on January 13, 1994.
On February 23, 1994, Jeansonne was permitted to work outside the confines of the correctional facility to perform maintenance work on vehicles owned by the Vernon Parish Police Jury. Jeansonne escaped from the area by stealing a car from the repair shop, but ran the car into the front yard of James Seaman, a former police officer. While attempting to restrain Jeansonne, Seaman received open wounds which were smeared with Jeansonne's blood. Thereafter, Jeansonne was apprehended by State and parish police officers. Subsequently, a blood test ordered by the Vernon Parish Correctional Facility revealed that Jeansonne was HIV-positive.

III.

LAW AND ARGUMENT

Standard of Review
Appellate courts review summary judgments de novo, under the same criteria which governs the trial court's consideration of whether summary judgment is appropriate. Benoit v. Roche, 94-715 (La. App. 3 Cir. 6/14/95); 657 So.2d 574. A motion for summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B).
The burden of production remains with the mover to show that no material issues of fact exist. La.Code Civ.P. art. 966(C). The mover must present supportive evidence that the motion for summary judgment should be granted. Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96); 685 So.2d 691; writ denied, 97-0281 (La.3/14/97); 690 So.2d 41. Once the mover has made a prima facie showing that the motion for summary judgment should be granted, the burden of production shifts to the nonmoving party to present evidence *696 demonstrating the existence of issues of material fact which preclude summary judgment. Id.

Duty
The DPSC contends that the trial court erred in denying its motion for summary judgment as there is no genuine issue of material fact that it is not liable to Seaman for the injuries he sustained. To support its motion for summary judgment, the DPSC submitted the affidavit of Susan Richardson, the Louisiana Department of Corrections Classifications Director. Richardson stated that Jeansonne was transferred to the Vernon Parish Correctional Facility from the East Baton Rouge Parish Correctional Facility on January 13, 1994. She asserted that the DPSC did not assume actual physical custody of Jeansonne until March 3, 1994. Thus, the DPSC contends that it did not have a duty to provide the Vernon Parish Correctional Facility with information regarding Jeansonne's medical and criminal history. Moreover, the DPSC argues that under the circumstances of this case, there is no statute which imposed a duty upon it to test Jeansonne for HIV. Finally, with regard to Jeansonne's criminal history of escape, the DPSC contends that the Vernon Parish Correctional Facility had access to a database of criminal history records which contained the information in question.
Seaman contends that upon transferring Jeansonne to the Vernon Parish Correctional Facility, the DPSC had a duty to provide Jeansonne's medical and criminal history. In support of its opposition to the DPSC's motion for summary judgment, Seaman introduced the affidavit of Warden Dewey Creasey. Creasey stated that the DPSC did not inform him of Jeansonne's HIV status or history of escape. He stated that if he had received this information, he would not have permitted Jeansonne to work outside the confines of the facility. In addition, Seaman introduced the deposition of Jeansonne, emphasizing that Jeansonne testified that blood had been drawn from him prior to his transfer to the Vernon Parish Correctional Facility. However, Seaman contends that the results of the blood test were not disclosed at the time of Jeansonne's transfer.
With regard to Jeansonne's history of escape, Seaman submitted the affidavit of Yvonne Hall, a deputy sheriff of Vernon Parish. Hall stated her duties include researching criminal histories. She explained that when she accessed the criminal history database to research Jeansonne's history, she did not find a reference to Jeansonne's history of escape. In addition to Hall's affidavit, Seaman introduced the criminal history report which Hall obtained through the database; the report does not contain information regarding Jeansonne's history of escape. Seaman argues that the DPSC had a duty to provide the information as it was not otherwise accessible to the Vernon Parish Correctional Facility.
"The determination [of] whether a particular duty should be imposed on a particular governmental agency is a policy question" that hinges on the facts and circumstances of each case. Fowler v. Roberts, 556 So.2d 1, 7 (La.1989). Legislation or a rule of law may impose a duty. Id. The question of whether a duty exists is a question of law that may be resolved by summary judgment. Harkins v. Gauthe, 97-912 (La.App. 3 Cir. 2/4/98); 707 So.2d 1308, writ denied, 98-0584 (La.4/24/98); 717 So.2d 1170. "However, the existence of a duty cannot be determined in the absence of a case's factual background and knowledge of what the surrounding circumstances may be." Id. at 1313. In this case, we conclude that the trial court properly denied the DPSC's motion for summary judgment as the factual circumstances of the case are not sufficiently determined to decide whether the DPSC owed a duty to the Vernon Parish Correctional Facility.
*697 The record reflects that there are material factual issues in dispute regarding the availability of Jeansonne's criminal history of escape. In his second amended petition, Seaman asserts that the DPSC possessed information that Jeansonne had a history of escape, but failed to convey that information upon Jeansonne's transfer to the Vernon Parish Correctional Facility. Warden Creasey's affidavit corroborates Seaman's assertion that this information was not conveyed to the Vernon Parish Correctional Facility. Moreover, Deputy Sheriff Hall's affidavit contradicts the DPSC's assertion that Jeansonne's escape history was available through a criminal database. We find that these factual disputes must be resolved before a determination can be made as to whether the DPSC had a duty to convey Jeansonne's history of escape to the Vernon Parish Correctional Facility.
We note that Harper v. State, Department of Public Safety & Corrections, 96-0047 (La.9/5/96); 679 So.2d 1321, a case relied upon by the DPSC, is factually distinguishable from this case. The DPSC argues that Harper is dispositive, and that pursuant to the holding of Harper, it had no duty to warn the Vernon Parish Correctional Facility of Jeansonne's history of escape. In Harper, Timothy Dowden, a prisoner with a history of parole violation, was permitted to work as a trustee outside the confines of the Grant Parish Jail. Dowden had been transferred to the Grant Parish Jail from the Vernon Parish Jail. He injured another prisoner while attempting to escape from the parish workshop. The injured prisoner brought suit against the DPSC, contending that the DPSC had a duty to warn the Grant Parish sheriff not to use Dowden as a trustee because the DPSC had a policy that parole violators should not be allowed to work outside of a jail. The court held that the Grant Parish sheriff was not controlled by the DPSC policy, emphasizing that the DPSC did not have "the power to control what a sheriff does with prisoners in his custody." Id. at 1323. Notably, the court recognized that "[t]he most [the DPSC] could have done was tell the sheriffs office that Dowden was a parole violator, a fact known to the sheriffs office." Id. at 1324 (emphasis added). The court explained that the sheriff considered this risk when it assigned Dowden to work outside of the jail.
We find that Harper is distinguishable from the present case because unlike the sheriff in Harper, the sheriff in this case did not know of Jeansonne's history of escape. Thus, in contrast to the sheriff in Harper, the sheriff in this case did not consider the risk posed by Jeansonne's criminal history when he assigned Jeansonne to work outside the confines of the correctional facility. As Harper is factually distinguishable from the present case, we reject the DPSC's argument that Harper mandates a finding that it did not have a duty to warn the Vernon Parish Correctional Facility of Jeansonne's history of escape.
Due to the existence of factual disputes which must be resolved before a determination can be made as to whether the DPSC had a duty to inform the Vernon Parish Correctional Facility of Jeansonne's history of escape, we remand the matter for a full trial on the merits. We pretermit consideration of whether the DPSC had a duty to monitor, discover, and treat Jeansonne's HIV positive status and to communicate this information to the Vernon Parish Correctional Facility.

IV.

CONCLUSION
Based on the foregoing reasons, the judgment of the trial court denying the DPSC's motion for summary judgment is affirmed and the matter is remanded to the trial court for a full trial on the merits. Costs of the appeal in the amount of $630.06 are assessed to the DPSC.
AFFIRMED AND REMANDED.