765 So.2d 464 (2000)
Donald Ray GULLETTE and Cindy Gullette, Plaintiffs-Appellants
v.
CALDWELL PARISH POLICE JURY, et al., Defendants-Appellees.
No. 33,440-CA.
Court of Appeal of Louisiana, Second Circuit.
June 21, 2000.
*465 Law Offices of Richard Fewell, Jr. by Byron D. Kitchens, West Monroe, Counsel for Appellants.
*466 Burns & Mckeithen by Don C. Burns, Columbia, Richard P. Ieyoub, Attorney General, Counsel for Appellee, State of Louisiana, DOC.
Anselm N. Nwokorie, Assistant Attorney General, Usry & Weeks by John F. Weeks, II, Freeman R. Matthews, Metairie, Counsel for Appellee, Caldwell Parish Law Enforcement District through Charles P. Thompson, Sheriff.
Before PEATROSS, KOSTELKA and DREW, JJ.
KOSTELKA, J.
Donald Ray and Cindy Gullette ("plaintiffs") appeal the trial court summary judgment in favor of the Louisiana Department of Corrections ("DOC").[1] We affirm.

FACTS
On or about December 12, 1996, Donald Ray Gullette ("Gullette") was incarcerated in the Caldwell Parish Detention Center ("Caldwell") in Caldwell Parish, Louisiana, for a driving while intoxicated conviction. While there, fellow inmates threw a boiling liquid upon him causing injuries for which medical treatment was required.[2] Although jailed in this parish facility, Gullette was in the legal custody of DOC.
Louisiana Corrections Service, Inc. ("LCS"), a private corporation, purchased the land upon which Caldwell was built. On October 20, 1994, LCS entered into a management agreement with the Caldwell Parish Law Enforcement District ("District") through the then Caldwell Parish Sheriff, as ex-officio chief executive officer of the District, for the building and management of the facility. The agreement required the District to operate and manage the facility and LCS to maintain the building and grounds. With the aid of the Leblanc Group ("Leblanc"), the designer of the jail, LCS had Caldwell constructed.
On September 5, 1995,[3] the District, again through the Sheriff of Caldwell Parish, entered into a Cooperative Endeavor Agreement with DOC because of overcrowding of state facilities. That agreement provided for the construction of the new jail with District bonds, required the District to "... operate and maintain the Jail Facility in accordance with the `Basic Jail Guidelines' ...."[4] and DOC to provide forty percent of Caldwell's inmate population and to pay Caldwell a set amount for each inmate as provided in La. R.S. 15:824(B)(1). The record shows that the amount paid in this case was $22.00 per day.
Plaintiffs instituted suit against the Caldwell Parish Police Jury and DOC. Through supplemental and amending petitions, plaintiffs added Leblanc, LCS and the District, represented by the Sheriff of Caldwell Parish, as defendants to the suit. Specifically, plaintiffs alleged that the cause of Gullette's damages was the negligence of the employees of the State of Louisiana and Caldwell Parish in failing to supervise the facility and inmates, in neglecting to assist Gullette after notice of his injuries, in having actual or constructive knowledge of the situation and neglecting to remedy it and in failing to use due care.
The Caldwell Parish Police Jury was dismissed from the suit by an exception of no right of action on October 7, 1998. LCS and Leblanc filed a motion for summary judgment on March 31, 1999. The trial court granted the motion dismissing *467 these parties from the suit on May 19, 1999. The motion for summary judgment which forms the basis for this appeal was filed by DOC on September 4, 1998. Therein, DOC sought to be dismissed from the suit because it claimed to owe no legal duty to Gullette. Plaintiffs argued that DOC owed a duty to Gullette based upon the fact that he remained within the legal custody of DOC and statutory provisions which give DOC the authority to prescribe rules and regulations for the maintenance of good order and discipline within the facilities under the jurisdiction of DOC. Plaintiffs also contended that the state should be held responsible under the doctrine of respondeat superior because of the amount of control exercised by DOC over the facility.[5] After a hearing on the motion, the trial court granted summary judgment finding that DOC owed no legal duty to Gullette. This appeal ensued.

DISCUSSION
The sole issue to be resolved on appeal is whether DOC owed a duty as a matter of law to Gullette to protect him against the alleged negligence of the Caldwell Parish Sheriffs employees. We agree with the trial court that no such duty exists.
A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966; Louisiana Health Services v. Brown Builders, 32,575 (La. App.2d Cir.12/08/99), 747 So.2d 708. Facts are material if they potentially ensure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. Hardy v. Bowie, 98-2821 (La.09/08/99), 744 So.2d 606.
With the 1997 amendment to La. C.C.P. art. 966, the jurisprudential presumption against granting summary judgment has been eliminated. Louisiana Health Services, supra. Indeed, the summary judgment procedure is now favored to secure the just, speedy and inexpensive determination of all except certain disallowed actions. La. C.C.P. art. 966A(2).
Under the current summary judgment approach, if the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. And, as consistently noted in La. C.C.P. art. 967, the opposing party cannot rest on the mere allegations or denials of his pleadings but must present evidence which will establish that material facts are still at issue. Louisiana Health Services, supra.
Summary judgment is appropriate when there are no material facts at issue and no legal duty exists. Bradford v. Kaster, 98-0758 (La.App. 1st Cir.05/14/99), 732 So.2d 827, writ denied, 99-1612 (La.09/17/99), 747 So.2d 567.
For a plaintiff to prevail on a negligence claim, a duty must be owed to the particular plaintiff. Harkins v. Gauthe, 97-912 (La.App. 3d Cir.02/04/98), 707 So.2d 1308, writ denied, 98-0584 (La.04/24/98), 717 So.2d 1170. Whether a legal duty is owed by one party to another depends upon the facts and circumstances of the case and the relationship between the parties. Self v. Walker Oldsmobile Co., Inc., 614 So.2d 1371 (La.App. 3d Cir.1993).
Legislation or a rule of law may impose a duty. Seaman v. Howard, 98-1492 (La.App. 3d Cir.06/02/99), 743 So.2d 694, writ denied, 99-1901 (La.10/29/99), 748 So.2d 1165. The question of whether a duty exists is a question of law which may *468 be resolved by summary judgment. Id. The duty issue may be appropriate for resolution by summary judgment when it is clear that no duty exists as a matter of law and the facts of credibility of the witnesses are not in dispute. Parish v. L.M. Daigle Oil Co., Inc., 98-1716 (La.App. 3d Cir.06/23/99), 742 So.2d 18.
On appeal, plaintiffs specifically argue that the duty owed to Gullette by DOC arises pursuant to the statutory provisions of La. R.S. 15:829 and 15:893 and the general authority and control exercised by DOC over Caldwell.
A close reading of La. R.S. 15:829 and 15:893, however, fails to support this part of plaintiffs' claim. La. R.S. 15:829 is found in Chapter 7 of Title 15, entitled Prisons and Correctional Institutions. The statute is specifically listed under Part III-A of Chapter 7 which is entitled Louisiana Department of Corrections. This part sets out the functions of the department "in relation to the administration, management and operation of all state institutions, for the care, custody and correction of persons sentenced for felonies and misdemeanors." [Emphasis added.] La. R.S. 15:821. Moreover, La. R.S. 15:893, which is contained in the same title and chapter, falls under Part IV-A, entitled Additional Institutions, likewise addresses DOC's authorization to create, operate and maintain other adult correctional state facilities. The clear legislative intent to distinguish between state and parish facilities is seen by the enactment of La. R.S. 15:702 which, although found under Title 15, Chapter 7, is nevertheless located in Part 1 of those provisions entitled Prisons and Prisoners in General. This part provides for the governing authority of each parish to be responsible for the physical maintenance of all parish jails and prisons and grants to the governing authority of each parish the authority to pass all bylaws and regulations necessary for the police and good government of parish jails. Likewise, La. R.S. 15:704 appoints the sheriff of the parish where the facility is located to be the keeper of the public jail and the preserver of peace therein. There is no dispute that Caldwell is a parish facility. Indeed, Leo Vaught ("Vaught"), the warden of the facility, was able to distinguish a parish facility, such as Caldwell, from one which is directly run by DOC. Based upon the clear inapplicability of these statutory provisions to a parish facility, we must, therefore, reject plaintiffs' argument that these statutes create any legal duty to Gullettte by DOC.
Plaintiffs nevertheless argue that DOC's payment of funds to Caldwell for the DOC inmates housed there and periodic inspections of Caldwell for compliance with DOC Basic Jail Guidelines (hereinafter "guidelines") effectively gives DOC "authority and control" over the facility, so as to create a duty to Gullette.
The depositions and documentary evidence before us show that Caldwell is a privately owned facility operated by the District through the Sheriff of Caldwell Parish. Caldwell Parish Sheriff Charles Thompson ("Thompson") testified in his deposition that all of the jail employees are considered sheriff's department employees; salary checks are paid from the sheriffs department account. Vaught testified in his deposition that he submits the jail budget to the Caldwell Parish Sheriff every six months and that he considered the Sheriff as his supervisor and employer.
The record shows that any contact by DOC with Caldwell occurred as the result of a Cooperative Endeavor Agreement (hereinafter "agreement") between Caldwell and DOC for the housing of state inmates at the parish facility. As the result of that agreement, Vaught and Thompson stated that DOC paid Caldwell $22.00 per day per inmate. See also La. R.S. 15:824(B). Vaught also testified that Caldwell followed the guidelines because it housed state inmates; the record shows that as part of the agreement, Caldwell agreed to operate and maintain the facility in accordance with these guidelines which were implemented by a separate agreement *469 between DOC and the Louisiana Sheriff's Association. The guidelines set forth general operational guidelines for parish jail facilities specifically relating to DOC inmates. The agreement also provided for periodic inspections by DOC employees to insure compliance with the guidelines. Vaught indicated that the state indeed periodically inspected the facilities in compliance with the agreement.
Vaught admitted that DOC would not put state inmates in a parish facility unless it was "operated by a law enforcement district, which, that is the Sheriffs Department." He also testified that Caldwell housed approximately 234 DOC inmates which was full-jail capacity.
We must decide whether these actions by DOC are sufficient to give rise to a legal duty. Instructive in our resolution is the case of Harper v. State Department of Public Safety and Corrections, 96-0047 (La.09/05/96), 679 So.2d 1321. In Harper, defendant Dowden was arrested and booked in a parish jail while on parole and under the supervision of DPSC. Dowden was made a trustee and assigned to work outside of the jail as a carpenter. On one such outing, Dowden and Harper, another inmate, were left unsupervised. Dowden struck Harper in the head as he attempted to prevent Dowden from escaping. Harper suffered severe brain damage and instituted suit against DPSC and other defendants including the sheriff of the parish where the jail was located. He alleged that DPSC had a duty to warn or advise the parish sheriff of an unwritten DPSC policy which stated that parole violators should not be allowed to work outside of a jail. The lower courts agreed and found that DPSC owed a duty to Harper. The Louisiana Supreme Court, however, disagreed and reversed the finding regarding DPSC's duty to Harper. The court reasoned that by statute, the sheriff is charged with the safekeeping of prisoners in his jail, including those who are transferred there. La. R.S. 15:704, 706(C). The court further stated that even though Dowden remained in the legal custody of DPSC, he was in the custody of the sheriff of the parish in whose jail he had been placed, not the custody of DPSC. The court further noted:
We have been given no citation to any statute or regulation which would give any arm of the DPSC the power to control what a sheriff does with the prisoners in his custody ... Furthermore, the sheriff is responsible for establishing regulations regarding the discipline, working and employment of such prisoners. LSA-R.S. 15:708 B. By statute, only where a sheriff transfers a prisoner who is under sentence to another jail, or where an inmate sentenced to the DOC is going to be used in a work release program, is DPSC or DOC approval required. LSA-R.S. 15:706 A(3) and 15:711 B. Other than these two exceptions, `the sheriff has absolute authority over the inmate without any control whatsoever exercised by the DPSC.' Cooley [v. State, 533 So.2d 124 (La.App. 4th Cir.1988)].
Accordingly, the court found that even had DOC informed the sheriff of the unwritten policy, DPSC could not enforce it. Moreover, it was the sheriff's duty to properly exercise his judgment in choosing which prisoners should work away from the jails. The sheriff, in his official capacity, was found to be completely at fault.
In Cooley, supra, an inmate also in the legal custody of DPSC was retained in the custody of the parish prison. While there, the inmate was allegedly beaten by sheriffs deputies and several inmates and was forced to perform degrading acts. The inmate filed suit against DPSC alleging that it was vicariously liable for the alleged acts of the deputies. Although the case was decided based upon the provisions of La. R.S. 42:1441, which specifically addresses the application of respondeat superior *470 to the State of Louisiana in cases like the present one, the court nevertheless rejected the idea that the per diem allowance paid by DPSC to the parish created any control by the state over the parish facility.[6] Indeed, after considering that fact, the court noted that "the only apparent control the DPSC has over the sheriff in such a case is set forth under La. R.S. 15:711 B," which requires written approval for DPSC prisoners to qualify for work release programs. The court also stated:
Due to the general overcrowding in the state prison system and the advent of court orders limiting the population of certain institutions, it is common for inmates sentenced to hard labor and committed to the DPSC to serve relatively short sentences in parish jails in the custody of parish sheriffs. The sheriff is responsible for the care of these inmates. Besides the instances previously mentioned, the sheriff has absolute authority over the inmate without any control whatsoever exercised by the DPSC.
After consideration of this jurisprudence and the statutory provisions cited therein, we conclude that as a matter of law, DOC owed no duty to protect Gullette from the alleged negligence of the Caldwell Parish Sheriff's employees. Both statutorily and jurisprudentially, the parish sheriff has been given complete control and absolute authority over the prisoners in his custody-even those who remain in the legal custody of DOC. This authority includes complete responsibility for the discipline and daily physical protection of prisoners. We agree with the Cooley court that DOC's payment to Caldwell of a per diem amount in no way affects the control exercised by the sheriff over this specific obligation. Nor does the periodic inspection of the facility impart control sufficient to impose liability upon DOC. We also find specious the argument that DOC's requirement that Caldwell submit to the guidelines confers the type or amount of control upon DOC which creates a legal duty to Gullette. As the name guidelines implies, this agreement merely sets forth a general outline of policy and procedure for the housing of DOC inmates. It is the individual sheriffs who are given the responsibility for implementing specific written policy, procedure and practice under the guidelines. This includes the enactment and enforcement of written policies relating to both the training of employees and prisoner discipline. The only authority given to DOC under the guidelines is to ensure that the written policies are in place. It is the sheriff who retains the duty to enforce those polices; DOC has "no power to control what a sheriff does with the prisoners in his custody." Harper, supra. Accordingly, we can discern no intent, either in purpose or practice, to confer upon DOC any part of the absolute statutory authority given to the parish sheriffs regarding obligations relating to the day-to-day custody of inmates in parish facilities. We decline to impose upon DOC the duty which has been given solely to the Sheriff of Caldwell Parish and, therefore, affirm the trial court summary judgment in favor of DOC at Gullette's costs.
AFFIRMED.
NOTES
[1] Also referred to herein as the Louisiana Department of Public Safety and Corrections. ("DPSC")
[2] Gullette had been transferred to the Caldwell Parish Detention Center from the Caddo Correctional Center on August 19, 1996. He was thereafter transferred to the Elayn Hunt Correctional Center on January 27, 1997.
[3] The Caldwell Parish Sheriff signed the agreement on August 31, 1995.
[4] See infra, explanation of the Basic Jail Guidelines.
[5] Plaintiffs have abandoned this argument on appeal.
[6] Notably, Cooley, supra, and La. R.S. 42:1441 dispose of plaintiffs' abandoned argument regarding the vicarious liability of the state under these circumstances. See also Jenkins v. Jefferson Parish Sheriff's Office, 402 So.2d 669 (La.1981). La. R.S. 42:1441 abrogates a cause of action based upon the doctrine respondeat superior against the state for any damage caused by the sheriff of a parish or an employee of the sheriff.