785 So.2d 803 (2001)
Phillisa JACKSON, Individually and as Natural Tutrix of Deandred Jackson and Jarion Jackson, and Shawanna Hughes
v.
STATE of Louisiana Through the DEPT. OF CORRECTIONS; Richard Stalder, Secretary, Louisiana Dept. of Corrections, et al.
No. 2000-C-2882.
Supreme Court of Louisiana.
May 15, 2001.
*804 Donald G. Cave, Baton Rouge, Counsel for Applicant.
Patricia N. Bowers, New Orleans, Richard P. Ieyoub, Attorney General, David G. Sanders, New Orleans, Jay A. Pucheu, Marksville, John D. Powers, Kenney L. Riley, Baton Rouge, Counsel for Respondent.
TRAYLOR, J.[*]
We granted a writ of certiorari to consider whether the Department of Public *805 Safety and Corrections (DPSC), and Richard Stalder, Secretary of DPSC, have a duty under the law regarding medical treatment for a state prisoner while housed at a parish facility operated by the local sheriff. For the reasons below, we reverse the judgment of the court of appeal granting the exception of no cause of action to the DPSC, affirm the judgment of the court of appeal granting the exception of no cause of action to Secretary Stalder, and remand to the trial court for further proceedings.

FACTS AND PROCEDURAL HISTORY
Phillisa Jackson was sentenced to the custody of the State of Louisiana, through DPSC, by order of the Eighth Judicial District Court for the parish of Winn on June 19, 1996. She was subsequently incarcerated at the Avoyelles-Bordelonville Correctional Center for Women (ABCC) in Moreauville, Louisiana.
According to the petition at issue in this suit, Ms. Jackson complained to the prison medical staff that she was unable to urinate while incarcerated at ABCC. Despite these complaints, she alleges that the medical staff took no action. Ms. Jackson finally sought assistance from defendant, Randy Normand, warden of ABCC, who also denied her request for medical treatment. When Jackson was finally treated, her condition had deteriorated to such an extent that she ultimately lost function in both of her kidneys.
Ms. Jackson, along with her one major and two minor children filed suit, naming as defendants the DPSC; Secretary Stalder; the ABCC;[1] Warden Randy Normand; Scottsdale Insurance Company; William 0. Belt, Sheriff of Avoyelles Parish; and three nurses who worked at the ABCC. Plaintiffs then amended their petition to add the Avoyelles Parish Police Jury (Police Jury) as a defendant.
The Police Jury subsequently filed an exception of no right of action and/or motion for summary judgment; Scottsdale filed a motion for summary judgment; and the DPSC and Secretary Stalder filed peremptory exceptions of no cause of action. The trial court denied the Police Jury's and Scottsdale's motions, but granted the exceptions as to the DPSC and Secretary Stalder.
In its oral reasons for judgment, the trial court found Secretary Stalder had qualified immunity for discretionary functions under the two part test enunciated in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The trial court further found that DPSC enjoyed statutory immunity pursuant to La. Rev.Stat. 42:1441.[2] Plaintiffs then filed a motion for new trial on the exceptions, which was denied.
The plaintiffs sought review at the First Circuit. Jackson v. State, Through Dept. of Public Safety and Corrections, 99-1707 (La.App. 1 Cir. 9/22/00, 771 So.2d 322) (not *806 designated for publication). The court of appeal affirmed, and found that the DPSC could not be held liable under Louisiana Corrections Private Management Act (LCPMA), specifically La. R.S. 39:1800.3, because the statute applies only to private entities who contract with the state. Additionally, the court of appeal concluded that DPSC had no duty to the plaintiffs under La.Rev.Stat. § 15:824 overcrowding contracts using a traditional duty-risk analysis based on the this Court's decision in Harper v. State, through Dept. of Public Safety and Corrections, 96-0047 (La.9/5/96), 679 So.2d 1321. Finally, the court of appeal affirmed the Secretary's dismissal based on the theory that if DPSC cannot be held liable, then neither can the Secretary operating in his official capacity.
Subsequently, this court granted a writ of certiorari to review the correctness of that decision. Jackson v. State, Through Dept. of Public Safety and Corrections, 00-2882 (La.1/5/01), 777 So.2d 1237.

DISCUSSION
The function of an exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the operative facts alleged in the pleading. Darville v. Texaco, Inc., 447 So.2d 473 (La.1984). No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. La.Code Civ. P. art. 931. Therefore, the court reviews the petition and accepts well pleaded allegations of fact as true, and the issue at trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234 (La.1993); Kuebler v. Martin, 578 So.2d 113 (La. 1991); Mayer v. Valentine Sugars, Inc., 444 So.2d 618 (La.1984).
In reviewing a trial court's ruling sustaining an exception of no cause of action, the reviewing court conducts de novo review because the exception raises a question of law. City of New Orleans v. Board of Commissioners of the Orleans Levee Dist., 93-0690, p. 29 (La.7/5/94), 640 So.2d 237, 253. Every reasonable interpretation must be accorded the language of the petition in favor of maintaining its sufficiency and affording to the plaintiff the opportunity of presenting evidence at trial. See Hero Lands Co. v. Texaco, Inc., 310 So.2d 93 (La.1975).

Exception of no cause of action filed by DPSC
Accepting all of the allegations in the petition as true, and applying the legal principles for the exception of no cause of action to the instant case, we find that the plaintiffs alleged sufficient facts to raise the legal theory regarding whether a duty, contractual or otherwise, exists between the DPSC and Ms. Jackson. For the purposes of an exception of no cause of action, we cannot conclude on the face of the petition that any alleged contractual relationship between DPSC and the Sheriff of Avoyelles Parish precludes liability by DPSC for failure to provide medical treatment to Ms. Jackson.
The petition of the plaintiffs alleges in paragraph two that Ms. Jackson was a state prisoner, and as such she was "transferred by the [DPSC] to the [ABCC], owned and managed by the Avoyelles Sheriff's office, through Sheriff Bill Belt." In paragraph six of the petition, plaintiff alleges that the State was negligent in failing to provide competent medical attention to Ms. Jackson; in failing to exercise due care; in failing to adequately review, supervise and care for a sick prisoner; and in failing to promulgate, promote, and publish rules and regulations for the handling *807 of a state prisoner in the custody of a parish sheriff. Thus, the petition puts forth facts sufficient to raise the issue of DPSC's transfer of state prisoners, how that transfer is effected, and whether DPSC retains any liability for negligent acts committed by the sheriff pursuant to that transfer.[3]
The defendants maintain that only two types of contracts can exist between the DPSC and the sheriff: (1) a contract under the LCPMA; or (2) an overcrowding contract pursuant to La.Rev.Stat. § 15:824. Defendants argue, and the court of appeal found, that the LCPMA is only applicable to private persons, and not governmental entities, based on the statutory language and the stated legislative purpose to contract for governmental services "by authorizing cooperative endeavors with private prison contractors ..." to reduce state expenses, and "... the interest on the part of many citizens in reducing the overall size of government." La. Rev.Stat. § 39:1800.2(A)-(B).
Thus, defendants urge that the only legal theory of contractual obligation falls under a La.Rev.Stat. § 15:824 overcrowding contract. Under a § 15:824 contract, defendants maintain that no cause of action exists because DPSC has no duty to a state prisoner for medical treatment while the state prisoner is in the physical custody of the Sheriff. See Harper, 679 So.2d at 1323; Gullette v. Caldwell Parish Police Jury, 33-340 (La.App.2d Cir.6/21/00), 765 So.2d 464.
However, in both cases cited by the defendants, the procedural posture of the case allowed the court to consider facts that were pivotal to the decision. Specifically, in Harper, this Court found no liability for physical injury perpetrated by another inmate while the state prisoner was in the sheriff's custody. The procedural posture of the case was review on appeal after a bench trial, with a finding by the lower courts that DPSC had no duty to the state prisoner. In that decision, certain critical facts formed a basis to that finding; namely, that the prisoner was a parolee, the lack of sufficient evidence regarding an alleged verbal DPSC policy, and lack of any statute or regulation granting DPSC control over the sheriff's use of prisoners for inmate work programs. See Harper, 679 So.2d at 1323.
Unlike the circumstances in Harper, several statutory regulations do exist regarding medical treatment of state prisoners while in the sheriff's custody. See La.Rev.Stat. § 15:824(B) (providing for reimbursement of extraordinary medical expenses by the state with written justification by the sheriff); La.Rev.Stat. § 15:831(B) (requiring DPSC to promulgate rules and regulations regarding reimbursement for medical expenses of state prisoners incurred by DPSC or the sheriff). See also La.Rev.Stat. § 15:827(2) (requiring DPSC to report results of inspections performed on local detention and correctional facilities to the Governor).
To accept DPSC's argument, and limit the theories of DPSC's duty, if any, to exclusively those that could be argued under either the LCPMA or the La.Rev.Stat. *808 § 15:824 overcrowding statute, would force us to assume the contents of a contract, or the circumstances surrounding the transfer of Ms. Jackson, that have not yet been shared between the parties through discovery, or presented to a court as evidentiary support for DPSC's position. On the flip side of the same argument, upholding the exception would imply that DPSC's authority for housing state prisoners is limited to two types of contracts: DPSC can either contract with a "private contractor" under the LCPMA, or effect a contract under La.Rev.Stat. § 15:824 for overcrowding. Neither the face of the pleadings, nor the law, support that conclusion. See, e.g., La.Rev.Stat. § 15:836 (providing that DPSC can enter into any agreements with political subdivisions necessary to effect its responsibilities); Op. Att. Gen. 94-424 (Aug. 22, 1994) (discussing the obligations of a parish police jury that entered into "a cooperative endeavor" with the DPSC to house state inmates under the LCPMA).[4] Thus, the lower courts erred in maintaining DPSC's exception of no cause of action.[5]

Exception of no cause of action filed by Richard Stalder, Secretary of DPSC
In her second assignment of error, Ms. Jackson alleges that the Secretary of the DPSC is not entitled to qualified or statutory immunity from suit brought by a state prisoner in connection with injuries sustained as a result of his exercise of operational control over the transfer and housing of state prisoners. However, the allegations plaintiffs make with regard to Secretary Stalder do not involve actions outside his discretionary authority.
Discretionary function immunity for state law claims is provided by La.Rev. Stat. R.S. 9:2798.1 which states:
(A) As used in this section, "public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, offices, officials, and employees of such political subdivisions.
(B) Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policy-making or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
(C) The provisions of Subsection (B) of this section are not applicable:
(1) To acts and omissions which are not reasonably related to the legitimate governmental objective for which the policy-making or discretionary power exists; or
(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.
(D) The legislature finds and states that the purpose of this Section is not to reestablish any immunity based on the status of sovereignty but rather to clarify *809 the substantive content and parameters of application of such legislatively created codal articles and laws and also to assist in the implementation of Article II of the Constitution of Louisiana.
The immunity from liability for discretionary acts is essentially the same as the immunity conferred on the federal government by the exception in the Federal Tort Claims Act (FTCA). Fowler v. Roberts, 556 So.2d 1 (La.1989) (on rehearing). In Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), the United States Supreme Court developed the following two-step analysis to examine immunity under FTCA: (1) whether a statute, regulation, or policy specifically proscribes a course of action; and (2) whether the challenged action is grounded in political, economic or social policy. This Court adopted the Berkovitz inquiry to analyze the applicability of La.Rev.Stat. 9:2798.1, describing it as follows:
Discretion exists only when a policy judgment has been made. Judicial interference in executive actions involving public policy is restrained by the exception. Thus, the exception protects the government from liability only at the policy making or ministerial level, not at the operational level.
Fowler, 556 So.2d at 15.
Irrespective of whether DPSC has "operational" liability to the plaintiff, we find that the Secretary, acting in his official capacity, is entitled to qualified immunity.[6] Regardless of how the transfer was accomplished, the Secretary enjoys discretion in deciding DPSC policy for housing state prisoners in effort to satisfy the myriad of social and economic demands for sufficient adequate prison facilities.
We also agree with the trial court's finding that Secretary Stalder was entitled to immunity for the federal law claims under 42 U.S.C. § 1983, citing Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). As this Court discussed in Moresi v. State, Through Dep't of Wildlife and Fisheries, 567 So.2d 1081, 1084 (La.1990), Harlow established a two part test under which a public official may claim his conduct is protected by qualified immunity:
First, the court must look to currently applicable law and determine whether the law was clearly established at the time the action in question occurred. The defendant pleading qualified immunity is entitled to dismissal before the beginning of discovery if the plaintiff's allegations do not state a claim of violation of clearly established law. If the court determines that the law was clearly established at the time the action occurred, the Harlow analysis requires the public official claiming immunity to show that, because of extraordinary circumstances, "he neither knew or should have known of the relevant legal standard."
Moresi, 567 So.2d at 1084 (citations omitted).
We find that the plaintiffs have failed to allege sufficient facts to establish conduct by the Secretary that violated Ms. Jackson's constitutional rights. The Secretary's discretionary function in transferring prisoners to local facilities do not *810 violate Ms. Jackson's constitutional rights, and plaintiffs do not allege that the Secretary knew Ms. Jackson would be denied medical treatment while incarcerated at ABCC. Further, we conclude that neither the Secretary nor DPSC's obligation to Ms. Jackson under state law is clearly established. Therefore, we affirm the lower courts' decision dismissing Secretary Stalder from the instant case with prejudice.

DECREE
Accordingly, we reverse the First Circuit Court of Appeal and the trial court judgments granting DPSC's exception of no cause of action. The judgments below granting Richard Stalder's exception of no cause of action are affirmed. The case is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.
NOTES
[*] Philip C. Ciaccio, Associate Justice Pro Tempore, sitting for Associate Justice Harry T. Lemmon; James L. Cannella, Associate Justice Ad Hoc, sitting for Associate Justice Jeannette Theriot Knoll, recused.
[1] ABCC filed a dilatory exception of lack of procedural capacity, which was rendered moot by a voluntary dismissal without prejudice.
[2] La.Rev.Stat. 42:1441 provides:

A. The state of Louisiana shall not be liable for any damage caused by a district attorney, coroner, assessor, sheriff, clerk of court, or public officer of a political subdivision within the course and scope of his official duties, or damage caused by an employee of a district attorney, coroner, assessor, sheriff, clerk of court, or public officer of a political subdivision.
C. For the purposes of this Section, "political subdivision" means a parish, municipality, and any other unit of local government, including a school board and a special district, authorized by law to perform governmental functions.
[3] In their brief to the lower courts and this Court, the plaintiffs allege that the DPSC, and Secretary Stalder, have operational control over prisoner transfers, and that plaintiff's transfer took place as a result of a contract entered into pursuant to the provisions of the LCPMA, La. R.S. § 39:1800.4, between Sheriff Bill Belt and Secretary Stalder, in his capacity as Secretary of the Louisiana Department of Corrections. However, the specifics of that allegation are not raised in the petition, but rather in the plaintiff's opposition to DPSC's Memorandum in Support of the Exception of No Cause of Action. DPSC did not file an Answer to the petition.
[4] We decline to address whether the DPSC can contract with the Sheriff of Avoyelles Parish under the LCPMA at this time.
[5] We recognize that the exact basis for defendants' liability is unclear at this point, although plaintiffs' petition alleges that some as yet unseen contract establishes a duty between the parties, or alternatively, that the State cannot abrogate its duties by contract. Should it ultimately be determined through discovery that defendants are shielded from liability under the contract, if one in fact exists, then nothing would preclude DPSC from seeking relief through a properly supported motion for summary judgment.
[6] Under a vicarious liability theory, the Court of Appeal held that because the DPSC owes no duty to prisoners incarcerated in a parish facility, then neither does the Secretary as chief executive officer of that agency. Because we find that the Secretary enjoys qualified immunity in his official capacity based on the allegations in the plaintiff's petition, we pretermit the argument that Secretary Stalder also enjoys statutory immunity through the theory of respondeat superior under La. R.S. 42:1441, although it may ultimately form an additional basis if DPSC is found not liable to the plaintiff.