WOODARD, Judge.
Through the Department of Public Safety and Corrections (DPSC), the State of Louisiana appeals the trial court’s allocation of fault to DPSC for Mr. Larry Jean-sonne’s escape from the Vernon Parish Correctional Facility and Mr. James A. Seaman’s subsequent exposure to HIV. We reverse.
[[Image here]]
In August of 1993, Mr. Jeansonne was convicted of cocaine possession and sentenced to two years at hard labor. After sentencing, DPSC returned him to the East Baton Rouge Parish Correctional Facility. On January 13, 1994, it transferred him to the Vernon Parish Correctional Facility.
The Vernon Parish Sheriffs Department permitted him to work outside of the Correctional Facility, performing maintenance work on the Vernon Parish Police Jury’s vehicles. On February 23,1994, he stole a van from the repair shop and escaped. He lost control and ran into James Seaman’s front yard. Mr. Seaman, a former law enforcement officer, tackled him, ultimately, receiving multiple scrapes and open wounds on his knuckles, which became covered with Mr. Jeansonne’s blood. Additionally, Mr. Jeansonne repeatedly spit on him and other people at the scene.
Thus, the Vernon Parish Correctional Facility ordered a blood test which revealed that Mr. Jeansonne was HIV-positive. One week later, Mr. Seaman’s pastor, who was also the Vernon Parish .Correctional Facility’s chaplain, told him that Mr. Jeansonne was HIV positive. Mr. Seaman filed suit against DPSC and others, seeking damages for his exposure to HIV and for his fear of contracting AIDS. DPSC is the only party before us. After the trial court denied its motion for summary judgment, it applied for supervisory writs which this court denied. However, the Louisiana Supreme Court granted writs and remanded the case to us for arguments. This court affirmed the trial court’s denial of the motion and remanded the matter for a full trial on the merits.
At trial, the court found that DPSC owed a duty to discover and transmit the inmate’s communicable disease and escape histories to the parish sheriff and correctional facility. Thus, it rendered a judgment, absolving the Vernon Parish |2Sheriff of any responsibility for the escape and for Seaman’s exposure to HIV, assessed 100% fault against DPSC, and awarded $70,000.00 in damages to the Seaman family. From this judgment, DPSC perfects this appeal.
STANDARD OF REVIEW
We may not set aside a trial court’s finding of fact, absent manifest error or unless it is clearly wrong.[1] As such, in order to reverse the trial court’s judgment, *1290 after reviewing the record in its entirety, we must find that a reasonable factual basis does not exist for the trial court’s finding and that the record establishes that the finding is clearly wrong.[2]
DPSC’s Duty to Test for HIV and to Inform
The trial court found that DPSC had a duty to discover whether an inmate is afflicted with a communicable disease and to inform the Vernon Parish Sheriffs Office of his status. Contrarily, DPSC asserts that it had no duty to disclose medical records since it never had physical custody of Mr. Jeansonne.
In 1997, the Louisiana Legislature passed La. R.S. 15:739, which imposed a duty to test an inmate, who has been involved in an incident where bodily fluids or wastes are thrown on another person, for HIV and AIDS. However, the statute was not in effect at the time of this altercation.
In the instant case, neither party presented either statutorily or jurisprudentially imposed duties. After thoroughly searching jurisprudence and statutory provisions, we have failed to find a duty, in effect at the time of the incident, applicable to the facts presented. Rather, the statutes that we have found which were in effect at that time provide for the testing of convicted sexual offenders and the like. For example, La.R.S. 15:535 provides, in pertinent part:
A. When a sexual offender is convicted, the court shall order and direct the offender to submit to a blood and saliva test, to be made by qualified physicians or other qualified persons, under such restrictions Land direction as the court deems proper.
[[Image here]]
C. The court shall also order the person convicted of or adjudicated a delinquent for a sexual offense as defined in R.S. 14:42 through 43.4 to submit to a test designed to determine whether the person is infected with a sexually transmitted disease, or is infected with acquired immune deficiency syndrome (AIDS), the human immuno deficiency virus (HIV), HIV-1 antibodies, or any other probable causative agent of AIDS. The procedure or test shall be performed by a qualified physician or other qualified person who shall report any positive result to the Department of Public Safety and Corrections, make the notification of the test results to the victim of the alleged offense, and notify the victim or the parent or custodian of the victim of the offense, regardless of the results.
Thus, we believe that had the legislature intended that every inmate be tested for a communicable disease, it would have promulgated a statute to that effect and would not have provided the specific limitations found in La.R.S. 15:535. Consequently, we find that DPSC did not have a duty to test Mr. Jeansonne.
However, if DPSC had knowledge that Mr. Jeansonne was HIV positive, it had a duty to disclose such information to Vernon Parish Sheriffs Office upon transferring him. The parties stipulated that Mr. Jeansonne’s blood was drawn while he was at the East Baton Rouge Parish Correctional Facility, before his transfer. The implication is that the DPSC knew of Mr. Jeansonne’s HIV status but failed to pass on his medical records or disclose this condition. However, the record contains no evidence regarding the nature of the tests, if any, performed on Mr. Jeansonne’s blood or why the blood was drawn. Nor is there any evidence in the record that DPSC knew or should have known that he *1291 was HIV positive. Consequently, Mr. Seaman has not met his burden of proof that DPSC breached the duty to disclose.
Therefore, we reverse this portion of the trial court’s judgment.
DPSC’s Duty to Provide an EsCape History
Lt. Randolph Johnson, supervisor of the Louisiana Bureau of Criminal Identification and Information with DPSC’s Criminal Records Division, testified by affidavit that “the Criminal Records Division of the Office of the State Police ... maintains a central repository of criminal history record information in a database | identified as the ‘Louisiana Computerized Criminal History,’ which database contains criminal history record information contributed by state and local criminal justice agencies in the State of Louisiana[.]” (Emphasis added.) Furthermore, he said that the information was “accessible at no charge to any eligible criminal justice agency ... via the Law Enforcement Telecommunications Network.” Clearly, the DPSC had access to the databases in which we would normally find criminal history such as a rap sheet. However, it asserts that it did not have that information before the incident with Mr. Seaman because the information was not in the database system until March of 1994. The record also contains a stipulation that: “The Vernon Parish Sheriffs Department did not inquire from the Louisiana Department of Public Safety and Corrections data base regarding any matter concerning Larry Jeansonne.” While this court’s previous opinion in Seaman[3] stated that Deputy Sheriff Yvonne Hall’s affidavit explained “that when she accessed the criminal history database to research Jeansonne’s history, she did not find a reference to Jeansonne’s history of escape,” actually, the affidavit merely states “that on June 17, 1998 as part of her aforesaid duties, Appearer had occasion to research the aforesaid records for the ‘rap sheet’ of Larry Joseph Jeansonne, date of birth December 16, 1959, Federal Bureau of Investigation No. 418816T1, which said ‘rap sheet’ is attached hereto and made a part hereof as Exhibit ‘A’; that the said “rap sheet” constitutes the sole such information available and accessible to the Vernon Parish Sheriff through the aforesaid system.” While Mr. Jeansonne’s rap sheet bears the letters “fug” three times, we have not been provided with any evidence that would indicate its significance; for example, whether it means that he escaped or simply failed to show up for a bench warrant or the like. Moreover, DPSC indicates that it did not have this rap sheet until after the incident in question.
Mr. Seaman bore the burden of proving that DPSC knew or should have known of Mr. Jeansonne’s escape history before March of 1994, the date that DPSC obtained custody of Mr. Jeansonne.[4] However, Mr. Seaman has provided us with no law to indicate that DPSC had a duty to discover this information nor has he supplied us | ¡¿with the procedure for how it was to acquire it. Again, without evidence, we cannot determine whether DPSC had the information but negligently did not enter it into the database or was required to constantly inquire of or solicit it from other agencies but failed to do so.
*1292 Lt. Johnson’s statement that the “ ‘Louisiana Computerized Criminal History,’ which database contains criminal history record information contributed by state and local criminal justice agencies in the State of Louisiana” implies that DPSC must rely on other law enforcement agencies’ diligence to supply the pertinent information, as opposed to it having an affirmative duty to obtain it. Assuming that this is true, certainly, it did not have a duty to disclose what it did not have or have a duty to discover.
Moreover, our supreme court instructs us that once a prisoner is transferred to the physical custody of a Sheriff, although he may remain in the legal custody of the DPSC, he is considered to be in the custody of the Sheriff who has the exclusive responsibility for his work assignment and safekeeping.[5] And, it absolves DPSC of having a duty to disclose information when law enforcement, which is housing the prisoner, also has knowledge of the same information,[6] as in the instant case.
We find that Mr. Seaman has not met his burden of proving that DPSC had the information before March 1994 but failed to disclose it nor that it had a duty to discover Mr. Jeansonne’s criminal history. We reverse.
CONCLUSION
Mr. Larry Jeansonne escaped from the Vernon Parish Correctional Facility with a van, ran into Mr. James A. Seaman’s front yard, and fought with him. Mr. Seaman’s injuries were covered with Mr. Jean-sonne’s blood. The Vernon Parish Sheriff and Correctional Facility performed a blood test which revealed that the prisoner was HIV positive.
Mr. Seaman filed suit against DPSC for failing to inform the Vernon Parish Sheriff and Correctional Facility of Mr. Jean-sonne’s HIV-positive status and of his escape history. We find that Mr. Seaman failed to satisfy his burden of proving that |fithe DPSC had a duty to determine his HIV status and that it had a duty to discover Mr. Jeansonne’s escape history.
We reverse and assess costs against Mr. Seaman.
REVERSED.
AMY, J., concurs in the result.

. Stobart v. State through Dep’t of Transp. & Dev., 617 So.2d 880 (La.1993).

. Id.

. 98-1492 pp. 5-6 (La.App. 3 Cir, 6/2/99), 743 So.2d 694.

. Granger v. Guillory, 01-1539 (La.App. 3 Cir, 6/5/02); 819 So.2d 477 writ denied, 02-1841 (La.10/14/02); 826 So.2d 1132, citing Cangelosi v. Our Lady of the Lake Reg'l Med. Ctr., 564 So.2d 654 (La.1990).

. Harper v. State, 96-47 (La.9/5/96); 679 So.2d 1321.

. Id.