CARTER, C.J.
| ¡¡This case involves a dispute arising out of the separation of the public schools managed, administered, and controlled by the Central Community School Board (Central) from the administration of the East Baton Rouge Parish School Board (EBRP). The controversy before us involves whether EBRP or Central is the legal taxing authority and recipient for the school-related 2007 ad valorem property taxes.
Basically, EBRP contends that it was the sole taxing authority within the geographic boundaries of the East Baton Rouge Parish school system that included the Central-area schools on January 1, 2007, because it actually provided for the education of students within the Central school system until July 1, 2007. Therefore, EBRP argues it is the appropriate taxing authority and recipient of the ad valorem property taxes for at least the first half of the 2007 calendar year. Conversely, Central contends that the governor appointed Central’s interim school board members on January 8, 2007, and the board was mandated to support and prepare for educating the Central school system’s students beginning July 1, 2007. Therefore, Central contends it is the proper taxing authority and recipient of the ad valorem property taxes for the entire 2007 calendar year. The trial court’s judgment on review declared that EBRP was “entitled to receive one-half of the 2007 school related ad valorem property taxes collected from with[in] the geographic limits of [Central.]” Thus, the trial court granted EBRP injunctive relief in the form of ordering the Sheriff of East Baton Rouge Parish (Sheriff) to remit one-half of the 2007 ad valorem property taxes and 100% *540 of any back property taxes collected prior to 2007 directly to EBRP. After considering this appeal on an expedited basis, we reverse the trial court’s judgment for the following reasons.

\ ¿FACTUAL AND PROCEDURAL BACKGROUND

On November 7, 2006, a majority of Louisiana voters approved a constitutional amendment that added Central to a statutory list of entities to be regarded as parishes so that Central could levy annual ad valorem property taxes to be used to operate, maintain, or support the newly-created Central school system. See LSA-Const. Art. 8, §§ 13(C) and (D)(1). Additionally, LSA-R.S. 17:66 and 17:66.1 provided for the creation, powers, duties, and function of Central’s school board and for the appointment of interim school board members, effective twenty days following the gubernatorial proclamation of adoption of the Constitutional amendment.[1] It is undisputed that the amendment and statutes became effective on December 11,2006.
Louisiana Revised Statute 17:66 F(l) specifically mandated that Central “shall begin actual operation of providing for the education of students within its jurisdiction on July 1, 2007.” (Emphasis added.) In keeping with the time constraints of the enabling legislation, the governor of Louisiana appointed an interim school board for Central on January 8, 2007, to begin preparations for the 2007-2008 school year. See LSA-R.S. 17:66.1 In addition, Central complied with statutory mandates to hold an election in March 2007 of the Central voters to approve an additional ad valorem tax for the Central school system.
It is undisputed that EBRP provided for the education of students within the Central school district prior to and throughout the entire 2006-2007 school year, including summer school services. It is also undisputed that the Central school board actually began providing for the education of students within its system on July 1, 2007, and continues to so provide to date. In early January 2007, the East |5Baton Rouge Parish Tax Assessor (Assessor) issued a letter recognizing Central as the proper taxing authority for the school-related ad valorem property taxes within the geographic area of Central’s school system, with the understanding that Central would directly pay EBRP any funds that it may be due for its portion of the 2007 ad valorem property taxes. This “understanding” was apparently based on previous unrelated arrangements between the Baker and Zachary school boards and EBRP, when the Baker and Zachary school systems similarly separated from EBRP a few years prior to Central’s separation. Central refused to agree to reimburse the East Baton Rouge Parish school system.
On November 5, 2007, EBRP filed a petition for writs of mandamus, seeking to have the trial court determine: (1) that Central could not levy an ad valorem property tax until it began operating the school system on July 1, 2007; (2) that ad valo-rem property taxes must be placed on the assessment rolls based upon the status of the property as of January 1 of each year; (3) that EBRP, rather than Central, should have been listed on the assessment rolls as the taxing authority for the property taxes included within the Central school system; and (4) that the Sheriff has the ministerial duty to collect the taxes and would be issuing erroneous bills begin *541 ning in December 2007 listing Central as the taxing authority and issuing checks to Central based on the erroneous tax roll beginning in January 2008. Therefore, EBRP prayed for the trial court to issue writs of mandamus directing: the Assessor to correct the assessment list to show EBRP as the legal taxing authority for the entire area including the Central school system; the Louisiana Tax Commission (Tax Commission) to recognize the corrected 2007 assessment lists; and the Sheriff to issue the tax bills showing EBRP as the taxing authority, remit to EBRP at least one-half of the 2007 ad valorem property taxes, | r,and remit to EBRP all of the back ad valorem property taxes for years prior to 2007 that are collected within the Central school system’s area.
In response, Central filed, among other exceptions, a peremptory exception raising the objection of no cause of action. After a hearing, the trial court signed a judgment on November 16, 2007, granting Central’s exception of no cause of action, but also granting EBRP leave to amend its petition to convert it to a petition for declaratory judgment so that EBRP could contest Central’s right to receive monies from the ad valorem property tax until July 1, 2007, when Central actually began operating its school system. The trial court also ordered that EBRP’s writs of mandamus be “made absolute, based on the opinion of the Court that the appropriate ad valorem taxing authority is [Central].” EBRP filed an expedited writ application that was denied by this court, finding “no error in the trial court’s ruling that [Central] is the appropriate taxing authority, and in its direction to the Assessor, Tax Commission and Sheriff to recognize [Central] as such.”[2] The Louisiana Supreme Court also denied EBRP’s writ application.[3] In the meantime, EBRP filed amended petitions for declaratory judgment, temporary restraining order, preliminary and permanent injunctive relief, or in the alternative, writ of mandamus. Central again responded by filing peremptory exceptions raising the objections of no cause of action and res judicata, as well as dilatory exceptions raising the objections of unauthorized use of summary proceedings and improper cumulation of actions.
On December 6 and December 21, 2007, the trial court held hearings on the merits of EBRP’s petition for declaratory judgment as to what amount, if any, of [ 7the ad valorem property tax monies collected for 2007 should be recovered by EBRP for providing for the education of the Central students until July 1, 2007. There was testimony from the Superintendent of EBRP, Charlotte Placide, that EBRP had entered into agreements with the Baker and Zachary school boards when they separated from EBRP, whereby the East Baton Rouge Parish school system received half of the ad valorem property tax revenue for the year each new school board was formed, but Central had refused to agree to the same terms because it wanted 100 % of the revenue. The trial court also received evidence and heard arguments regarding Central’s exceptions that had been referred to the merits. After the hearings, the trial court denied Central’s exceptions and took all of EBRP’s matters under advisement.
On January 9, 2008, the trial court signed a judgment, denying all of Central’s exceptions and granting EBRP’s petition *542 for declaratory judgment, declaring that EBRP was “entitled to receive one-half of the 2007 school related ad valorem property taxes collected from withfin] the geographic limits of [Central].” The judgment further ordered that EBRP’s request for injunctive relief was granted and ordered the Sheriff to remit one-half of the 2007 ad valorem property taxes within Central’s area and all of any back property taxes collected from the same area for years prior to 2007 directly to EBRP. Central devolutively appealed the January 9, 2008 judgment, contending that the trial court erred in denying Central’s exceptions and in finding that EBRP was entitled to one-half of the 2007 ad valorem taxes presumably to reimburse EBRP for performing its legal duty to educate students within the Central school district during the 2006-2007 school year. Central also argues on appeal that the trial court erred in issuing an injunction requiring the Sheriff to pay monies collected for ad valo-rem property |staxes after July 1, 2007, directly to EBRP. This court granted Central’s request for an expedited appeal in a separate writ action.[4]
EBRP filed an answer to Central’s appeal, seeking modification of the judgment in order to have EBRP identified as the 2007 taxing authority and writs of mandamus issued to the Assessor, Sheriff, and Tax Commission recognizing EBRP as the proper authority. Essentially, EBRP argues that the trial court should have issued writs of mandamus in addition to the declaratory/injunctive relief provided, so that the Assessor, Tax Commission, and Sheriff would all identify EBRP as the sole and proper ad valorem property taxing authority for 2007.
Central filed a motion in this court to strike or dismiss EBRP’s answer to appeal, arguing that the answer is an improper attempt to appeal the November 16, 2007 judgment denying EBRP’s request for writs of mandamus to remove Central as the taxing authority. Central contends in its motion to dismiss or strike that the November 16, 2007 judgment is final. Central also argues that the law of the case doctrine precludes further review of the November 16, 2007 judgment. Central maintains that this court has already ruled that the trial court did not err in determining that Central is the appropriate taxing authority and in directing the Assessor, Tax Commission, and Sheriff to recognize Central as such. Central’s motion to strike or dismiss the answer to appeal was referred to the merits.

LAW AND ANALYSIS

Public education is a function of the sovereign, with school boards implementing the constitutional mandate to provide public schools and to administer public education. City of Baker School Board v. East Baton Rouge Parish School Board, 99-2505 (La.App. 1 Cir. 2/18/00), 754 So.2d 291, 293. |The task of educating the children of Louisiana rests with the individual school boards throughout the state. Id. Concerning funding for the actual operation, maintenance, or support of a public school system, each parish, municipality, or city school board is authorized to levy annual ad valorem property taxes. LSA-Const. Art. 8, § 13(C). An interpretation of the constitutional and statutory language allowing school boards to levy an ad valorem property tax and determining which school board is the proper taxing authority, present legal questions. Appel *543 late review of questions of law is simply to determine whether the trial court was legally correct or incorrect, giving no special weight to the findings of the trial court. City of Baker School Board, 754 So.2d at 292.
This court previously ruled on the question of law presented by this appeal, in an unpublished writ action on November 20, 2007. In that writ action, this court denied EBRP’s request for supervisory review and specifically found “no error in the trial court’s ruling that [Central] is the appropriate taxing authority.” East Baton Rouge Parish School Board v. Brian Wilson, et al., 07-2313 (La.App. 1 Cir. 11/20/07) (unpublished writ action), writ denied, 07-2253 (La.12/3/07) (unpublished writ action). Under the law of the case doctrine, an appellate court generally will not, on a subsequent appeal, reconsider its earlier ruling in the same case. This discretionary doctrine only applies to parties and issues that were actually presented and decided by the appellate court. Poole v. Guy Hopkins Construction, 07-0079 (La.App. 1 Cir. 11/2/07), 984 So.2d 43, 49, n. 1; Display South, Inc. v. Express Computer Supply, Inc., 06-1137 (La.App. 1 Cir. 5/4/07), 961 So.2d 451, 453, n. 3. Generally, when an appellate court considers arguments made in supervisory writ applications, the court’s disposition on the issue considered becomes “law of the case” foreclosing relitigation of that issue either at the trial court on remand or in the appellate court on a later appeal. |inHowever, the denial of a writ application creates a different situation. A denial of supervisory review is merely a decision not to exercise the extraordinary powers of supervisory jurisdiction, and does not bar reconsideration or a different conclusion on, the same question when an appeal is taken from a final judgment. Id.
This case presents a unique situation in that when EBRP actually sought supervisory review of the trial court’s November 16, 2007 judgment, it was seeking reversal of the trial court’s ruling that Central was the proper taxing authority and requesting that writs of mandamus be issued to correct tax assessment rolls. In response to EBRP’s request, this court explicitly held that the trial court’s ruling was correct, and therefore, denied the writ. Thereafter, the trial court specifically referred to and relied on this court’s confirmation that Central was the proper taxing authority when it ruled on the merits of EBRP’s request for declaratory and injunctive relief. We maintain our previous holding that Central is the proper taxing authority for the 2007 school-related ad valorem property taxes within the geographic area of Central’s school system. However, in the interest of justice and because we did not explain our reasoning in the prior writ action, we will now examine and interpret the constitutional and statutory authority that supports this holding.
EBRP bases its claim to being the legal taxing authority and the recipient of the tax monies as of January 1, 2007, in large part on LSA-Const. Art. 8, § 13(C), which specifically states that each school board “actually operating, maintaining, or supporting a separate system of public schools” shall levy an annual ad valorem maintenance tax on subject property. EBRP contends that since Central did not begin the actual operation of providing for the education of students until July 1, 2007, (as mandated by the enabling legislation of LSA-R.S. 17:66 F) it cannot levy such a tax for 2007. Thus, EBRP maintains that it was the only taxing authority Inthat could levy any taxes in the geographic area that is now the Central school system prior to July 1, 2007. EBRP highlights the importance of January 1 of each *544 year, since it contends that is the date that the Assessor is required to place ad valo-rem taxes upon the assessment rolls pursuant to LSA-R.S. 47:1952 A.[5] However, this statute is aimed at the property taxed and does not mention the taxing authority in any fashion. In fact, the statute actually allows the Assessor to note the transfer of ownership of immovable property that takes place after January 1 but before November 15 (the date the Assessor must file the tax roll with the tax collector) of each year, and provides for the tax notice to be sent to the current owner rather than the owner of the property as of January 1. See LSA-R.S. 47:1952 A and LSA-R.S. 47:1993 D(l). EBRP does not address the portion of LSA-Const. Art. 8, § 13(C) that allows a school board that supports a separate system of public schools to levy the ad valorem tax or an additional ad valorem tax as approved by the voters.
Central counters by pointing out that LSA-R.S. 17:66 A(l)[6] provides that once the interim school board is appointed by the governor, a separate school system and school board is established. Therefore, Central contends that its school board and school system came into being on January 8, 2007, when the interim board was appointed. Central further argues that the interim board is a body | ^corporate in law charged with powers and duties to support the organization and implementation of the system to educate the students. See LSA-R.S. 17:66.1. Central relies on testimony from the Superintendent of Central, Michael W. Faulk, Central board member, Wilfred Martin Guilbeau, Jr., and Central board president, Russell Starns. Central contends that testimony reveals that the interim board immediately began working, budgeting, seeking, and gaining voter approval for an additional ad valorem tax, and exercising its duties to support the new Central school system in January 2007. The statutes relied on by Central are silent as to the taxing authority.
Louisiana Revised Statute 47:1957 A provides for the listing and assessment of all taxable property in the state, assigning that responsibility to the Assessors under the supervision of the Tax Commission, and listing the properties by parish, school board, police juries, and other recipients of ad valorem taxes. Louisiana Revised Statute 47:1987 A provides that the preparation and listing on the assessment lists shall be completed by the Assessor on or before July 1 of each year, and that the Assessor shall provide notice to the taxpayer of the amount of the assessment. Again, the statute is silent as to the taxing authority. Louisiana Revised Statute 47:1993 A(l) provides for the preparation and filing of rolls by the Assessors as soon *545 as the assessment lists have been approved, and directs that the assessment lists be delivered to the Tax Commission and the recorder of mortgages. Additionally, subsection C requires the Assessors to secure the approval of the Tax Commission before filing the assessment rolls with the tax collector (the Sheriff). Finally, LSA-R.S. 47:1993 D(l) provides that the tax roll for each parish must be filed on or before November 15 of each calendar year. Like the other statutes mentioned, the language merely deals with the taxable property, not the taxing authorities or recipients.
11sAnother relevant statute is LSA-R.S. 47:1990, which provides that the Tax Commission may change or correct any and all assessments of property for the purpose of taxation, and such corrections may be made at any time before the levied taxes have been paid. This statute shows that EBRP’s claim that the important date for taxation assessment runs from January 1 of each year is subject to correction. Similarly, LSA-R.S. 47:1991 provides for the cancellation of erroneous or double assessments even after the tax collector has been provided the assessment rolls. Therefore, the statutory scheme clearly recognizes and allows for the need to correct the assessment rolls even after mid-November of each year. Louisiana Revised Statute 47:1998 A(l)(a) allows any taxpayer or bona fide representative of an affected tax-recipient body in the state that is dissatisfied with the final determination of the Tax Commission to file suit within a limited period of time to contest the correctness of the assessment.[7]
After thoroughly examining the language of each statute and the Constitutional amendment, we believe that the January 1 date relied on by EBRP is solely for the assessment of the ad valorem property taxes and does not apply to the establishment of taxing authorities and the recipients of the taxes. Moreover, LSA-Const. Art. 8, § 13(C) uses the disjunctive “or” in regard to authorizing the school board “actually operating, maintaining, or supporting ” a separate system to levy an annual ad valorem maintenance tax on the subject properties. Once Central’s interim school board members were appointed on January 8, 2007, Central began working and “supporting” a separate school system by organizing and preparing for the actual education of the students on July 1, 2007. Thus, |MCentral is the proper taxing authority for the 2007 school-related ad valo-rem property taxes collected from within the geographic limits of the Central school system. We decline to reach a different conclusion on this issue.
Having reaffirmed that Central is the appropriate taxing authority for the 2007 ad valorem property taxes, we find that the trial court erred in denying Central’s peremptory exception raising the objection of no cause of action. An exception of no cause of action presents a question of law that an appellate court will review de novo. Jackson v. State ex rel Dept. of Corrections, 00-2882 (La.5/15/01), 785 So.2d 803, 806. The exception is tried on the face of the petition, and the well-pleaded facts in the petition must be accepted as true for purposes of determining an exception of no cause of action. See LSA-C.C.P. art. 931; Jackson, 785 So.2d at 806. This exception is designed to test the legal sufficiency of the petition to determine whether the plaintiff is afforded a *546 remedy in law based on the facts alleged in the petition. Everything on Wheels Subaru,, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1235 (La.1993).
We have carefully examined EBRP’s amended petitions. We find that EBRP has failed to state any cause of action that would entitle it to require the Sheriff to pay it any portion of the 2007 ad valorem property taxes at issue, since EBRP is not the proper taxing authority. In this context, the trial court erred in granting EBRP’s request for a declaratory judgment asserting that it was entitled to at least one-half of the 2007 ad valorem property taxes. Only Central, as the sole taxing authority, is entitled to collect the tax monies at issue.
EBRP also requested injunctive relief to enjoin the Sheriff from distributing any additional property taxes to Central, and alternatively, requested a writ of mandamus be issued to the Sheriff directing him to withhold distribution of all of the 2007 school-related ad valorem property taxes collected within the geographic 1^limits of the Central school district. However, a writ of mandamus is used only to compel the performance of a ministerial duty that is clearly required by law. City of Shreveport v. Stanley, 446 So.2d 839, 843 (La.App. 2 Cir.), writ denied, 450 So.2d 956 (La.1984). Because EBRP is not the proper 2007 taxing authority for the Central school system, the Sheriff cannot be compelled to withhold distribution of the tax monies or to pay a certain portion of the tax monies to EBRP. Therefore, EBRP has failed to state a cause of action for a writ of mandamus.
Further, injunctive relief is only appropriate in cases where irreparable loss or injury is threatened and the moving party is without an adequate remedy at law. Irreparable injury is that which cannot be adequately compensated in money damages or measured by a pecuniary standard. Giauque v. Clean Harbors Plaquemine, L.L.C., 05-0799 (La.App. 1 Cir. 6/9/06), 938 So.2d 135, 140, writs denied, 06-1720, 06-1818 (La.1/12/07), 948 So.2d 150, 151. EBRP alleges that it is owed money from the 2007 ad valorem property taxes because it was actually operating and educating in the Central schools until July 1, 2007. It is obvious from EBRP’s prayer for relief in its amended petitions that it is seeking relief that can be adequately compensated in monetary damages or measured by a pecuniary standard and that is more properly addressed in an ordinary proceeding for money damages via a separate suit for reimbursement for services rendered or based upon the theory of unjust enrichment.[8] Therefore, EBRP has failed to state a cause of action for injunctive relief.

CONCLUSION

We conclude that the trial court erred in its January 9, 2008 judgment granting declaratory and injunctive relief to EBRP and denying Central’s peremptory exception raising the objection of no cause of action.[9] Because we have previously determined that Central is the appropriate taxing authority to collect the tax monies at issue, EBRP’s amended petitions do not *547 state facts to support a declaration that it is entitled to receive one-half of the 2007 school-related ad valorem property taxes collected within the geographic limits of the Central school system.[10] Likewise, EBRP’s amended petitions do not state facts to support injunctive relief or a writ of mandamus. Therefore, we hereby reverse the decision of the trial court and dismiss EBRP’s amended petitions with prejudice at EBRP’s cost.[11] All costs of this appeal in the amount of $1,216.00 are hereby assessed to EBRP.
REVERSED.

. The governor proclaimed adoption of the Constitutional amendment by Acts 2006, No. 861 on November 20, 2006.

. East Baton Rouge Parish School Board v. Brian Wilson, et al., 07-2313 (La.App. 1 Cir. 11/20/07) (unpublished writ action).

. East Baton Rouge Parish School Board v. Brian Wilson, et al., 07-2253 (La.12/3/07) (unpublished writ action).

. East Baton Rouge Parish School Board v. Brian Wilson, et al., 08-0446 (La.App. 1 Cir. 3/7/08) (unpublished writ action).

. Louisiana Revised Statute 47:1952 A provides for the place and time of listing and the assessment of taxable property, and in so doing requires that “[ajssessments shall be made on the basis of the condition of things existing on the first day of January of each year.”

. Louisiana Revised Statute 17:66 A(l) provides in pertinent part that “upon the appointment of members of the interim school board as provided in [LSA-JR.S. 17:66.1, there shall be established a separate school system and school board for [Central] ...” (emphasis added). Louisiana Revised Statute 17:66.1 provides that all members of Central's interim school board shall be appointed by the governor within 30 days after the effective date of the statute (December 11, 2006); that the interim board shall continue in existence until the taking of office of the initial elected members of Central's board as provided by LSA-R.S. 17:66; that the interim board "shall constitute a body corporate in law;” and that interim board shall adopt rules, regulations, and procedures consistent with the law to effectuate the statute and to administer the duties, functions, and responsibilities of the interim board.

. We note that this particular statute provides a remedy for tax-recipient bodies dissatisfied with a final determination of the Tax Commission, lending credence to the conclusion that the proper resolution in regard to the division of collected taxes is via an ordinary action, not a writ of mandamus.

. We emphasize that while EBRP’s allegations may amount to a cause of action for reimbursement of the funds expended in educating the students within the geographic limits of Central’s school system until July 1, 2007, we express no opinion on that potential action because it is not currently before us.

. Our holding allows us to pretermit discussion of all remaining assignments of error in this appeal, including the answer to appeal.

. Again, we express no opinion as to EBRP’s potential separate claim for reimbursement for services rendered or unjust enrichment.

. EBRP’s amended petitions sought entitlement to the 2007 ad valorem property tax monies based on its assertion that it was the proper taxing authority. Since that premise has been decided otherwise, we have determined that EBRP will be unable to amend its petitions to state a cause of action. See LSA-C.C.P. art. 934. Any further action brought by EBRP would need to be in the form of a separate ordinary proceeding seeking reimbursement for funds expended or unjust enrichment.