TOBIAS, J.,
concurs in part, dissents in part, and assigns reasons.
hi respectfully concur in part and dissent in part from the decision of the majority.
I agree with the majority’s analysis and conclusions relative to the trial court’s reversible error when it applied the Housley presumption. I dissent from the majority conclusion that the five hundred new plaintiffs’ claims are not prescribed; those five hundred plaintiffs’ claims are in fact prescribed under existing law and jurisprudence. The peremptory exception of prescription must be maintained. See, Herlitz Construction Co., Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981).
In their summation of the facts, I note that the majority omits the following pertinent facts.
First, after the police arrived and did not deem an evacuation necessary, other emergency responders reported to the scene; at no time did any emergency responders wear a respirator at the scene, even when standing on top of the tractor/trailer.
| ySecond, the attorneys for Ms. Smith, Mr. Porter, and Mr. Dixon also represented the Fulford/Abram plaintiffs in federal court class action suit.
Third, when the trial court denied the exception of prescription and stated that the earlier filed class actions interrupted prescription for the five hundred new plaintiffs, supervisory writs were filed with this court and the Louisiana Supreme Court by Transport, both of which were denied. The majority fails to note the law respecting the effect of a denial of a writ application, to-wit: The denial of a writ application has no precedential value. State v. Davis, 09-0438, p. 19 (La.App. 4 Cir. 1/13/10), 30 So.3d 201, 211; Arceneaux v. Amstar Corp., 06-1592, p. 20 (La.App. 4 Cir. 13/07/07), 969 So.2d 755, 771; State v. Williams, 00-1725, p. 4 n. 3 (La.11/28/01), 800 So.2d 790, 795; St. Tammany Manor, Inc. v. Spartan Building Corp., 509 So.2d 424, 428 (La.1987); see also, Cavalier v. State ex rel. Dept. of Transp. and Development, 08-0561, p. 5 (La.App. 1 Cir. 9/12/08), 994 So.2d 635, 640 (“Application of the ‘law of the case’ principle to decisions made on supervisory writs is discretionary. Therefore, any prior ‘determination’ in a request for a supervisory writ is *494 not necessarily binding on a subsequent appeal. Diamond B Const. Co., Inc. v. Department of Transp. and Development, 02-0573 (La.App. 1 Cir. 2/14/03), 845 So.2d 429, 434.”)
Generally, the denial of supervisory writs does not bar a different conclusion or reconsideration of the same issue argued in the writ application when an appeal is taken from a final judgment. Levine v. First Nat. Bank of Commerce, 06-394 (La.12/15/06), 948 So.2d 1051, 1056 n. 4; East Baton Rouge Parish School Bd. v. Wilson, 08-0536 (La.App. 1 Cir. 6/6/08), 992 So.2d 537, 543; Diamond B Construction, 845 So.2d at 434. Likewise, where a prior disposition is clearly erroneous and will create a grave injustice, it should be reconsidered. Louisiana Land and Exploration Co. v. Verdin, 95-2579 (La.App. 1 Cir. 9/27/96), 681 So.2d 63, 65, writ denied, 96-2629 (La.12/13/96), 692 So.2d 1067, cert. denied, 520 U.S. 1212, 117 S.Ct. 1696, 137 L.Ed.2d 822 (1997).”)
Transport argues that the trial court erred by failing to apply La. C.C.P. art. 596 to the issue of prescription; instead the court applied La. C.C. art. 3462, the earlier and more general statute. It also argues that in this case, prescription was suspended and not interrupted. Thus, the addition of the approximate five hundred plaintiffs was untimely.
In LeBreton v. Rabito, 97-2221, pp. 5-6 (La.7/8/98), 714 So.2d 1226, 1228-29, the Supreme Court distinguished interruption from suspension:
Liberative prescription is a mode of extinguishing a legal claim that has not been filed by a creditor during a time period stipulated by law. La. Civ.Code art. 3447; G. Baudier-Lacantinerie & A. Tissier, TRAITE THEORIQUE ET PRATIQUE DE DROIT CIVIL, No. 25 (4th ed.1924), reprinted in 5 CIVIL LAW TRANSLATIONS at 15 (La. St. Law Inst. Trans.1972). The basis for prescription may be said to rest on three major policies. First, it promotes social and legal stability. Id., supra, No. 27, at 16-17. Second, prescription is based partially on a presumption of payment. Id., supra, No. 32, at 21. Third, when prescription extinguishes a debt it is usually because of the negligence of the creditor.
Prescription runs against all persons unless an exception is established by legislation. La.Civ.Code art. 3467. When a petition reveals on its face that prescription has run, the plaintiff bears the burden of establishing that the claim has not prescribed. Wimberly v. Gatch, 93-2361 (La.4/11/94), 635 So.2d 206. The three legislative principles on which plaintiff can rely to meet that burden are suspension, interruption, and renunciation. Id.
Because prescription adversely affects creditors, prescription may be suspended in favor of creditors who cannot enforce their claims. Suspension of prescription constitutes a temporary halt to its running. One doctrinal source aptly describes suspension as a period of time in which prescription slumbers. G. Baudier-Lacantinerie & A. Tissier, supra, No. 415, at 221-22. Prescription is suspended for as long as the cause of suspension continues. After the cause for the suspension ends, the prescriptive time begins running and the “time which precede[d] the suspension is added to the time which follows it to compose the necessary period; only the Lperiod of the suspension is deducted.” Id. At the root of the principle of suspension is the recognition that a creditor should not lose his legal claim during a period when enforcement of the claim is prevented. Id., Nos. 368, 389, at 193, 207-08.
*495 In contrast to suspension, interruption not only stops the running of prescription, it “annuls the commenced prescription so that after the interruption ceases, a new prescription must commence.” Id., No. 415, at 221. Furthermore, unlike suspension which requires no act by the creditor, interruption results from an act by a creditor or a debtor’s renunciation. La. Civ.Code arts. 8462-66.
Article 596 suspends prescription; prescription is not interrupted. In the instant case, the Fulford/Abram lawsuits were filed on 7 August 2008, exactly one year from the date of the accident. Article 596 provides:
Liberative prescription on the claims arising out of the transactions or occurrences described in a petition brought on behalf of a class is suspended on the filing of the petition as to all members of the class as defined or described therein. Prescription which has been suspended as provided herein, begins to run again:
[[Image here]]
(8) As to all members, thirty days after mailing or other delivery or publication of a notice to the class that the action has been dismissed, that the demand for class relief has been stricken pursuant to Article 592, or that the court has denied a motion to certify the class or has vacated a previous order certifying the class. [Emphasis supplied.]
The trial court below referred to an “interruption” based on La. C.C. art. 3463, rather than a suspension based on La. C.C.P. art. 596. However, it appears that the trial court relied in part on the correct statute (article 596), holding that the plaintiffs had thirty days from notice to join the lawsuit of Ms. Smith, Mr. Porter, and Mr. Dixon.
Transport contends that prescription began to run again on 1 June 2004, when the United States District Court entered the order denying class certification to the Fulford/Abram plaintiffs. Because the lawsuits were filed on the last day before prescription had run, all members had to be joined within the thirty-day ^window provided by subsection (3) of article 596. Thus, Transport argues that the claims of the five hundred plaintiffs added to the lawsuit on 4 October 2004 have prescribed.
Conversely, the plaintiffs assert that the thirty-day period began to run for putative class members on 7 September 2004, when notice was mailed to the putative class members and/or on 19-24 September 2004, when notice was published in the local newspaper. Therefore, they contend that the addition of the five hundred claimants on 4 October 2004 was timely.
The real issue then is what type of notice is required as it is “notice” that begins the running of the thirty days.
Interestingly, article 596 makes no reference to actual notice or to the method that should be employed to give notice. In contrast, numerous statutes requiring notice are quite specific, for example:
• La. R.S. 12:71(2): notice shall be published in a newspaper published in the parish in which the registered office of the corporation is located.
• La. R.S. 22:2060(B)(1): notice by publication in a newspaper of general circulation shall be sufficient.
• La. R.S. 30:129.1: notice by publication in either the official journal of the state or in the Louisiana Register.
• La. R.S. 33:172(B): notice by publication shall be given once of the filing of the petition in a newspaper published or having general circulation in the municipality.
*496 • La. R.S. 33:1882: public notice by publication, during thirty days, after the manner of judicial advertisements, in one newspaper published in the parish.
• La. R.S. 33:4720.60(D)(1): public notice, by publication twice in ten days in a newspaper having a general circulation in the community.
• La. R.S. 43:202(A): In the parish of Orleans, when advertisements are re-quii’ed to be made in relation to judicial proceedings, or in the sale of property under judicial process, or in any other legal proceedings of whatever kind, the advertisement shall be inserted in a daily newspaper published in an office physically located in the parish of Orleans and published in the English language, and which has been published as a daily paper for at least five years prior to the insertion of the advertisement or publication.
|6* La. C.C.P. art. 3229: notice of the application shall be published once in the parish where the succession proceeding is pending in the manner provided by law.
Quite clearly, if the legislature required actual notice and/or publication in the local newspaper as the only sufficient means by which to satisfy the notice requirement in La. C.C.P. art. 596(3), it would have so stated. It did not. And legislators are presumed to know the law. State ex rel. Varnado v. Louisiana Highway Commission, 177 La. 1, 7, 147 So. 361, 362 (La.1933); Theriot v. Midland Risk Ins. Co., 95-2895, p. 4 (La.5/20/97), 694 So.2d 184, 186.
The plaintiffs argue that notice did not occur, at the earliest, until their attorneys sent notice to some of the putative class in early September 2004 or, at the latest, when a notice was published by the local paper later in the month. However, under this theory, if notice by mail or publication never occurs, prescription could remain suspended indefinitely. This flies in the face of the purpose for prescriptive statutes.
An exception of prescription is intended to promote the avoidance of stale claims and the resultant loss or non-preservation of relevant evidence. In Demma v. Automobile Club Inter-Insurance Exchange, 08-2810, p. 13, n. 9 (La.6/26/09), 15 So.3d 95, 104, the Supreme Court stated that prescription statutes are also intended to protect defendants from the lack of notification of a formal claim within the prescriptive period. Taylor v. Babin, 08-2063, p. 13 (La.App. 1 Cir. 5/8/09), 13 So.3d 633, 642. “The fundamental purpose of prescription statutes is only to afford a defendant security of mind and affairs if no claim is made timely, and to protect him from stale claims and the loss or non-preservation of relevant proof.” Moore v. Gencorp, Inc., 93-0814 (La.3/22/94), 633 So.2d 1268.[1]
17While I agree that the thirty-day period began to run once “notice” was given (a “federal district court sitting in diversity is bound to apply state law when calculating the ‘commencement’ date for purposes of the statute of limitations.” Glaze v. Ahmad, 954 F.Supp. 137, 139 (W.D.La.1996)), I find that the notice provisions of La. C.C.P. art. 596(3) do not apply here. In other words, an examination of what eon- *497 stitutes article 596(3) notice is of no moment.
In a diversity case, a federal court must apply the substantive law of the state while following federal procedural rules. This principle applies equally when the case is originally filed in federal court or is later removed to federal court. Fed. R. Civ. Pro. 81(c) instructs the courts that the Federal Rules of Civil Procedure “apply to civil actions removed to the United States district courts from the state courts and govern procedure after removal” [emphasis supplied].
The Supreme Court’s first landmark decision and seminal case concerning when to apply federal or state law came in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Ene Court overruled its previous doctrine in Swift v. Tyson, 41 U.S. (16 Pet.) 1, 10 L.Ed. 865 (1842) that interpreted the Rules of Decision Act 1 Stat. 92 (1789) (current version at 28 U.S.C.A. § 1652 (1948)) as requiring a federal court faced with a choice of federal or state law in a diversity case to apply the rules and enactments promulgated by the state legislative authority instead of federal law. State decisional law would not govern in a federal diversity case under the Swift doctrine. Patricia M. Noonan, Note, State Personal Jurisdictional Requirements and the Non-Aggression Rule in Class Action, 1987 U. Ill. L.Rev. 445, 466 (1987) (hereinafter “Noonan”). The Erie Court declared that no federal general common law exists. Erie, 304 U.S. at 78, 58 S.Ct. 817. Thus, except in matters governed by the federal IsConstitution or by acts of Congress, Erie mandates that the court apply the law of the state. Id.; Noonan, supra, at 466.
The Erie decision, together with the Rules Enabling Act, which authorized the Supreme Court to draft and promulgate procedural rules for the federal courts, seemed to indicate that a federal court in a diversity case should apply the substantive law of the state in which it was located and the procedural law that the federal law prescribed. J. Friedenthal, M. Kane, A. Miller, Civil Procedure § 4.4 (1985) (hereinafter “Friedenthal”). The Supreme Court later rejected the substance versus procedural approach in Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Instead, an outcome-determination analysis was applied: state law governs when applying federal law would significantly affect the result of the litigation. Id. at 109, 65 S.Ct. 1464; Noonan, supra, at 466. Subsequent Supreme Court decisions, such as Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949), Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949), and Cohen v. Beneficial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), followed York even though some argued that requiring federal courts to apply state law encroached on federal interests. Id. These decisions prompted concern over the viability of the federal rules in diversity actions. Byrd v. Blue Ridge Rural Electronic Cooperative, Inc., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958) allayed this fear somewhat by suggesting that federal courts should no longer apply the outcome-determination test where significant federal policies need to be protected. Friedenthal, supra, § 4.4. This test proved confusing, however, because the significance of state and federal policies was difficult to measure. Id.; Noonan, supra, at 466
Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) conclusively established the Federal Rules’ viability by creating a presumption in favor of the federal rules. Noonan, supra, at 466; Friedenthal, supra, § 4.4. The Hanna *498 Court arrived at its decision by separating, for purposes of analysis, the Rules of Decision Act, the Enabling Act, and the constitutional demands to which the Erie opinion had alluded. Ely, The Irrepressible Myth of Erie, 87 Harv. L.Rev. 693, 699 (1974). Where a federal rule is at issue, the Court held that the Rules Enabling Act, and not the Rules of Decision Act, controls whether federal or state law should apply. Ely, supra, at 718; Noonan, supra, at 466. Only where no federal rule directly governs the disputed matter, or when a court may apply both state and federal rules concurrently, do the Erie-York analysis and the Rules of Decision Act apply. Hanna, 380 U.S. at 466-67, 85 S.Ct. 1136. When a federal rule is involved, the Hanna Court followed the test outlined in Sibbach v. Wilson & Co., 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941): the court must follow the federal rule and can refuse to do so only if the Advisory Committee, the Supreme Court, and Congress erred in their prima facie judgment that the rule transgresses neither the terms of the Enabling Act nor constitutional restrictions. Id. at 13-15, 61 S.Ct. 422. In other words, the federal rules are presumed to be a valid exercise of the Court’s authority to promulgate procedural rules for the federal courts. Noonan, supra, at 467. The Constitution in Erie contexts is treated no differently than its function in other areas of federal power. Ely, supra, at 706. The Constitution gives the national legislature wide discretion to carry out powers granted to it by the Constitution. Accordingly, the Court will find matters falling within the uncertain area between substance and procedure, if rationally capable of classification as either, to be within the congressional power to make rules governing the practice and pleading in the federal courts. Hanna, 380 U.S. at 472, 85 S.Ct. 1136; Noonan, supra, at 467.
Courts have considered the propriety of a class action under Rule 23 to be a question of procedural law. Noonan, supra, at 467. A procedural rule is designed to make the process of litigation a fair and efficient mechanism for the resolution of disputes. Id.; Ely, supra, at 724. Even under Louisiana law, a class action is a procedural tool wherein substantive facts are not considered when deciding the issue of certification. Pollard v. Alpha Technical, 08-1486, p. 15 (La.App. 4 Cir. 1/28/10), 31 So.3d 576, 582; Andry v. Murphy Oil, U.S.A., Inc., 97-0793 to 97-0800, pp. 2-3 (La.App. 4 Cir. 4/1/98), 710 So.2d 1126, 1129. See also Thomas v. Mobil Oil Corp., 08-0541, p. 18 (La.App. 4 Cir. 3/31/09), 14 So.3d 7, 18-19.
Procedural laws prescribe a method for enforcing a previously existing substantive right and relate to the form of the proceeding or the operation of the laws. Keith v. U.S. Fidelity & Guar. Co., 96-2075, p. 6 (La.5/9/97), 694 So.2d 180, 183. Substantive laws either establish new rules, rights, and duties or change existing ones. St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809 (La.1992).
Rule 23 of the Federal Rules of Civil Procedure was applied by the federal district court when determining whether the Fulford/Abram plaintiffs met the requirements of class certification. Thus, I look to Rule 23 and federal case law to determine what constitutes sufficient notice when class certification is denied. See e.g., Foradori v. Harris, 523 F.3d 477, 486 (5th Cir.2008).
Rule 23 requires a district court to give notice to absent class members of developments in the suit in only two situations. The first is when the court certifies a class under Rule 23(b)(3) because common issues of law or fact predominate over other aspects of the suit and render a class *499 action the appropriate vehicle to resolve claims. The second is when a class action is to be dismissed or compromised. See Fed.R.Civ.P. 23(e); Payne v. Travenol Laboratories, Inc., 673 F.2d 798, 812, cert. denied, 459 U.S. 1038, 103 S.Ct. 451, 74 L.Ed.2d 605 (1982).
However, clearly-established federal jurisprudence holds that no requirement exists to notify putative class members of the denial of class certification. In Rineheart v. Ciba-Geigy Corp., 190 F.R.D. 197 (M.D.La.1999), the court performed a thorough analysis of Fifth Circuit precedent to conclude that “no notice of a dismissal or settlement to asserted class members is required if there has been a judicial denial of class certification.” Id. at 200, citing Pearson v. Ecological Science Corp., 522 F.2d 171, 177 (5th Cir.1975) (“Hence, where a court has ruled under Rule 23(c)(1) that an action cannot properly be maintained as a class action the notice requirements of Rule 23(e) do not apply, at least where the dismissal and settlement of the action do not directly affect adversely the rights of individuals not before the court.”). A federal district court for the Eastern District of Louisiana specifically adopted the reasoning of Rineheart in denying a request for notice after the denial of class certification. Street v. Diamond Offshore Drilling, Civ. A. No. 00-1317, 2001 WL 883216, at *1 (E.D.La. July 30, 2001). See also Hervey v. City of Little Rock, 787 F.2d 1223, 1230 (8th Cir.1986) (“Finally, we note that notice of the decer-tification is required only to the extent necessary to reach those potential class members who received notice of certification and relied on being included in the class. [Emphasis added.]”).
This court also addressed this issue. In Smith v. Cutter Biological, 99-2068, p. 30 (La.App. 4 Cir. 9/6/00), 770 So.2d 392, 409, we stated:
Armstrong v. Martin Marietta Corp., 138 F.3d 1374, 1382 (11 Cir.), cert. den., 525 U.S. 1019, 119 S.Ct. 545, 142 L.Ed.2d 453 (1998), found that “the tolling of the statute of limitations ceases as soon as the district court denies class certification.” The Armstrong opinion also states that:
[RJeliance on the possibility of a reversal of the court’s certification decision is ordinarily not reasonable. We therefore conclude that continued tolling of the statute of limitations after the district court denies class certification is unnecessary to protect any reasonable [emphasis original] reliance by putative class members on their former class representatives.
Id. at p. 1381. Based on this reasoning, to the extent that prescription may have been interrupted by the 1993 filing of Wadleigh, [v. Rhone-Poulenc Rorer, Inc., 157 F.R.D. 410 (N.D.Ill.1994), mandamus granted, Matter of Rhone-Poulenc Rorer, Inc. 51 F.3d 1293, 1296 (7 Cir.1995), cert. den, sub nom, Grady v. Rhone-Poulenc Rorer, Inc., 516 U.S. 867, 116 S.Ct. 184, 133 L.Ed.2d 122 (1995) ] that interruption ceased on March 11⅞16, 1995 when the Federal Appeals Court issued the mandamus to the district court to decertify the Wadleigh class. At the very latest, prescription began to run again when the district court judge (Grady) actually entered the order of decertification in January of 1996. Plaintiffs’ wrongful death claim was not filed until more than a year later, in March of 1997. [Emphasis supplied.]
In summary, when a class action based upon a Louisiana cause of action is tried in federal court, Louisiana substance law applies to issues involving the plaintiffs’ cause of action (in the case at bar, the plaintiffs’ claim for damages and the appli *500 cable prescriptive statutes). Federal procedural law applies to issues involving how proceedings are handled in the federal court. That is, a federal court applies the Federal Rules of Civil Procedure to pretrial, trial, and post-trial procedures. In the case at bar, La. C.C.P. art. 596 contains both substance and procedural parts. Reproduced below are relevant parts of article 596; the substantive portions of article 596 are italicized and the procedural portions are boldfaced:

Liberative prescription on the claims arising out of the transactions or occurrences described in a petition brought on behalf of a class is suspended on the filing of the petition as to a,ll members of the class as defined, or described therein. Prescription which has been suspended as provided herein, begins to run again:

[[Image here]]
(3) As to all members, thirty days after mailing or other delivery or publication of a notice to the class that the action has been dismissed, that the demand for class relief has been stricken pursuant to Article 592, or that the court has denied a motion to certify the class or has vacated a previous order certifying the class.
The fact that the giving of notice is a procedural matter is well-settled. In Organization of United Taxpayers and Civic Associations of Southeast Baton Rouge, Inc. v. The Louisiana Housing Finance Agency, 96-2406, p. 6 (La.App. 1 Cir. 11/7/97), 703 So.2d 107, 112, the court stated:
11sHowever, OUT did not raise in its lower court pleadings substantive issues regarding the extension of tax credits granted by LHFA; rather, OUT contended in the lower court that the LHFA action violated Louisiana’s Open Meeting Law for failure to give adequate notice-a procedural matter. [Emphasis added.]
In Swann v. Performance Contractors, Ltd., 271 So.2d 294, 296 (La.App. 3rd Cir.1973), while the court was discussing personal jurisdiction, it stated:
Nevertheless a reading of the comments under La. R.S. 13:3471 makes it clear that the draftsman intended 1) to provide for personal jurisdiction over nonresident corporate deféndants who have engaged in a business activity in this state and thereby avail the citizenry of the benefits of the relaxed substantive due process requirements in regard to in personam jurisdiction as announced by the United States Supreme Court in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); McGee v. International Life Ins. Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); and 2) to provide a means by which service of process could be made which would not offend the procedural due process requirement of notice reasonably designed to apprise the corporation of a pending lawsuit. [Emphasis added.]
In Michael H. Rubin and Stephen P. Strohchein, Security Devisest 55 La. L.Rev. 611, 651 (2005), the authors stated:
Invalidation of a sale under some state laws, however, may be due to procedural errors (e.g., the debtor or others had actual notice of the sale but the notice did not comply with state timing rules or wording rules) or substantive ones. [Emphasis added.]
In John O. McGinnis, The Bar Against Challenges To Employment Discrimination Consent Decrees: A Public Choice Perspective, 54 La. L.Rev. 1507, 1522 (1994), the author stated:
These systematic effects will thus form the nub of any due process chai- *501 lenge to this provision of Section 108 by supporting the argument that notice without intervention offers insufficient procedural protection for substantive rights. [Emphasis in original.]
In Naquin v. Titan Indemnity Co., 2000-1585, pp. 4-5 (La.2/2/01), 779 So.2d 704, 708, the Court was discussing service of process but the comments are equally applicable to the notice provision in La. C.C.P. art. 596:
The rules governing service of process are procedural because they prescribe a method for enforcing a previously existing substantive right and relate to the form of the proceeding or the operation of the laws. As procedural rules, the provisions governing service of process do not create substantive rights. [Emphasis added; citations omitted.]
Likewise, reliance on actual notice by the attorneys or publication in a local newspaper of the denial of class certification is unreasonable: it could take months for either or both of these events to occur, as they did in this case.[2] The plaintiffs have not pointed out any way that putative class members relied on any action of the federal district court, such as a denial of certification, which would prompt the need for notice.
The plaintiffs argue that the federal district court neither ordered that notice be given nor did Transport request that the court issue formal notice to the putative class members. However, based on Rule 23, no such notice is required and, under federal jurisprudence, such a request by either side may not have been granted. The United States Fifth Circuit Court of Appeals in In re Katrina Canal Breaches Litigation, 2010 WL 4561378 (5th Cir.2010), affirmed the district court’s denial of the plaintiffs request to order the defendants to give notice of the denial of the class certification, stating:
Finally, Plaintiffs argue that the district court erroneously denied their request to order Defendants to notify individual policyholders of the district court’s decision and the existence of their individual rights. They contend that the court was empowered to order such notice by Fed.R.Civ.P. 23(d)(1)(B). Even assuming that the district court had the power to issue such an order, which we do not decide, there is nothing that requires the court to order notice of the denial of class | ^certification, and we find no abuse of discretion in the court’s refusal to do so. See, e.g., Pearson v. Ecological Science Corp., 522 F.2d 171, 177 (5th Cir.1975) (“[W]here a court has ruled under Rule 23(c)(1) that an action cannot properly be maintained as a class action the notice requirements of Rule 23(e) do not apply....”); see also Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974) (“The usual rule is that a plaintiff must initially bear the cost of notice to the class.”).
Id. at *2 (emphasis supplied). See also, Street, supra.[3]
Finally, I find that the putative class members received notice of the federal court’s denial of class certification when the attorneys for the Fulford/Abram lawsuit received notice. Knowledge to the lawyer is knowledge to the lawyer’s client. One cannot know when the lawyers began *502 to represent each of the five hundred plaintiffs added in October 2004. However, the lawsuit of Ms. Smith, Mr. Porter, and Mr. Dixon was filed on 8 June 2004, one week after the federal court judgment was entered into the record. These lawyers were already representing a number of the claimants in the consolidated federal cases and knew that the probability of additional claimants was very high. The moment a lawyer began representing a claimant, the lawyer’s knowledge of the federal court’s 1 June 2004 judgment refusing to certify the class is imputed to his client.
In Smart Document Solutions, LLC v. Miller, 07-670 (La.App. 3 Cir. 10/31/07), 970 So.2d 49, the court examined the relationship between an attorney and his client. It was most impressed by the analysis and conclusion from the North Dakota Supreme Court:
[T]he attorney-client relationship differs from the general agency relationship because the attorney-client relationship is subject to an established code of professional responsibility governing members of the Bar, and the attorney, not the client, is in charge of the litigation and determines the services necessary to promote the best interests of the litigation. See Judd & Detweiler v. Gittings, 43 App.D.C. 304 (1915); Molezzo Reporters v. Patt, 94 Nev. 540, 579 P.2d 1243 (1978); Burt v. Gahan, 351 Mass. 340, 220 N.E.2d 817 (1966); Monick v. Melnicoff, 144 A.2d 381 (D.C.Mun.App.1958); Roberts, Walsh & Co. v. Trugman, 109 N.J.Super. 594, 264 A.2d 237 (1970); Brown & Huseby, Inc. v. Chrietzberg, 242 Ga. 232, 248 S.E.2d 631 (1978).
The rationale for this rule was perhaps best stated in Judd & Detweiler v. Gittings, 43 App. D.C. at 310-311:
“While it is true that an attorney is the agent of his client, the relation between them, we think, is such that it calls for some modification of the general rule which the law recognizes as existing between principal and agent. In ordinary transactions, the agent is subordinate to the principal, the principal standing out as the real actor, and the agent merely as a subordinate representative. But the relation between attorney and client is different. The attorney has complete charge of the litigation, is so recognized by the court, and, as such, dominates in all matters pertaining to the conduct of the litigation. ‘While in one sense the client is the principal and the attorney the agent, and while the attorney is professionally and constantly acting for clients, whose names from the records of the courts and other means of publicity are almost always known or may be so, yet there are peculiarities in his case which make it necessary to apply to it with some qualification the general principles of agency. In most cases of agency the principal is what the name imports,-the leading person in the transaction. The agent is, as the term implies, a mere subordinate, important only as the representative of the principal; often representing only one principal. An attorney at law, on the other hand, occupies a position of recognized importance in itself, not infrequently of great prominence before the public, in which he often has a large number of clients, his relations to whom are full of detail, and who are little noticed by the public.’ Heath v. Bates, 49 Conn. 342, 44 Am.Rep. 234. The attorney usually determines what steps are to be taken in his client’s interest, and the acts of the attorney in the conduct of litigation are binding *503 upon the client. We therefore deem the just and equitable rule of law thus established to be that, in the absence of express notice to the contrary, court officials and persons connected, either directly or indirectly, with the progress of the litigation, may safely regard themselves as dealing with the attorney, instead of with the client.”
Id. at pp. 4-5, 970 So.2d at 51-52. I agree with the analysis above. The lawyers in the instant matter were in control of the litigation. They filed a timely suit on behalf of three claimants, yet chose to apparently “withhold” notice from the 117putative class members until early September 2004. Presumably, this gave them four months to enter into contracts of representation with the five hundred additional plaintiffs before adding them to the current proceedings. They now want to control the commencement of the thirty days afforded by La. C.C.P. 596(3) by sending notice when they were ready to do so, rather when the thirty days began under the law.
Therefore, I adhere to Cutter and the caselaw cited above and find that the putative class members had thirty days or until 1 July 2004 to file their individual claims.
Only Tenesha Smith, Melvin Porter, and Wallace Dixon filed timely claims. However, the plaintiffs additionally contend that the amended petition filed on 4 October 2004 relates back to the filing of the petition by Ms. Smith, Mr. Porter, and Mr. Dixon on 8 June 2004. I disagree.
La. C.C.P. art. 1153 states:
When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth in the original pleading, the amendment relates back to the date of filing the original petition.
In Giroir v. South La. Med. Ctr., Div. of Hospitals, 475 So.2d 1040 (La.1985), the Supreme Court examined the jurisprudence applying Federal Rule of Civil Procedure 15(c), upon which La. C.C.P. art. 1153 is based, and concluded that “[a]l-though the [federal] Rule refers to ‘an amendment changing the party’ it has properly been held to sanction relation back of amendments which add or drop parties, as well as those substituting new parties for those earlier joined.” 475 So.2d at 1043 (collecting authorities). While acknowledging the “less difficult” legal analysis for the relation back of amendments involving a change of capacity, the court nonetheless set forth factors to consider for the relation back of an amendment adding or changing plaintiffs. Id. at 1044. Relying on Ray v. Alexandria Mall, 434 So.2d 1083 (La.1983), regarding amended petitions adding or substituting defendants, the Court set forth these factors in Giroir: “[a]n amendment adding or substituting a plaintiff should be allowed to relate back if (1) the amended claim arises out of the same conduct, transaction, or occurrence set forth in the original pleading; (2) the defendant either knew or should have known of the existence and involvement of the new plaintiff; (3) the new and the old plaintiffs are sufficiently related so that the added or substituted party is not wholly new or unrelated; and (4) the defendant will not be prejudiced in preparing and conducting his defense.” Giroir, 475 So.2d at 1044.
Giroir has since been applied in various situations in the courts of appeal, with some courts finding that the added claims of a new plaintiff did relate back to the filing of the original petition and other courts finding to the contrary. However, the Supreme Court has pointed out that the enumerated Giroir factors are guidelines to be considered under the totality of the circumstances before an amendment adding a new plaintiff will be deemed to relate back pursuant to La. C.C.P. art. *504 1153. Warren v. Louisiana Medical Mut. Ins. Co., 07-0492, pp. 4-6 (La.12/2/08), 21 So.3d 186, 189-90.
Applying the Giroir factors to the instant matter, I find that the amended petition of 4 October 2004 does not relate back to the original timely-filed petition. While arguably two of the four criteria are met, the new and old plaintiffs are totally unrelated. Further, under Rule 23, Transport was entitled to rely on the 1 July 2004 deadline established in La. C.C.P. art 596(3) and make the logical assumption that it was defending the state court action against only three plaintiffs, not five hundred three plaintiffs.
And finally, the majority’s reliance on Taranto v. Louisiana Citizens Property Ins. Corp., 10-0105 (La.3/15/11), 62 So.3d 721, in any respect is misplaced. Taranto stands for the proposition that the filing of a lawsuit designated as a class action against an insurer suspends prescription until district court ruled on motion to certify the class. The entirety of Taranto involves decisions of Louisiana state courts and addresses the legislature’s extension of the prescriptive periods arising from damages due to Hurricane Katrina. Unlike the case at bar, the question of notice to class members was not at issue at all and, concomitantly, the issue of whether notice was required to be given to the putative class members when a federal court determines that no class exists is not discussed and is not an issue. More precisely, the Court held that:
... despite the language of the LCPIC insurance policy, which mandated a one year suit limitation, the Plaintiffs’ lawsuit was timely filed because prescription was suspended upon the timely filing of the pending class action suits, which included the Plaintiffs as putative class members.
Id., p. 1, 62 So.3d at 724. An attempt to expand the Taranto decision to the case at bar does not comport with appropriate jurisprudential interpretation; the facts are materially different.
Thus, the amended petition must be dismissed with prejudice.

. The plaintiffs argue that Transport knew that there were more people affected by the caustic release and, therefore, Transport is not prejudiced by the amended petition adding five hundred additional plaintiffs. On the contrary, defendants are entitled to know when a cause of action has prescribed. For Transport, on 2 July 2004, it could reasonably rely on the fact that it was only defending itself from the claims of three plaintiffs, not five hundred.

. I note that Ms. Smith, Mr. Porter, and Mr. Dixon, represented by the same attorneys representing the plaintiffs in federal court and the five hundred plaintiffs added by amended petition, timely filed their lawsuit. Their attorneys cannot plead ignorance of the class-certification denial or of the law.

. In both cases, the plaintiffs were requesting notice, not the defendants.